## WINTER & CO. *vs.* BURT.

[ASSUMPSIT ON PROMISSORY NOTE.]

1. *Opinion of witness vs expert.*—A witness cannot be allowed to testify to the value of machinery, when it appears that he has not the knowledge requisite to enable him to testify as an expert.
2. *Proof of value of machinery.*—An expert, called to testify to the value of machinery, cannot be asked, "If said machinery cost $3,200, and was warranted to cut 3000 feet of inch boards in a day, and yet could cut but 1500 feet in a day, how much would it be worth?"
3. *Cross examination of witness.*—A witness may be asked, on cross examination, questions which would not be relevant or pertinent on his examination in chief.
4. *Admissibility of agent's declarations as evidence against principal.*—To make the declarations of an agent admissible evidence against his principal, they must be explanatory of some contemporaneous act within the scope of his authority.

APPEAL from the Circuit Court of Autauga.

Tried before the Hon. ANDREW B. MOORE.

ASSUMPSIT by J. S. Winter & Co., (a firm composed of Joseph S. Winter and John G. Winter,) against Martin R. Burt, as the maker of a promissory note for $1066 66, dated Montgomery, April 18, 1851, and payable on the 1st January next after date, to the plaintiffs' order, at their office in Montgomery; which note was proved to have been given in part payment for certain machinery manufactured for defendant, at the "Winter Iron Works" in Montgomery, by Gindrat & Co., which firm was composed of John G. Winter, Joseph S. Winter, and Abram Gindrat. No pleas appear in the record.

On the trial, as appears from the bill of exceptions, the plaintiffs offered in evidence the note sued on, with the written contract for the manufacture of the machinery; and proved that the note was given in part payment for the machinery, as stipulated in the contract. "There was evidence tending to show, that the machinery specified in the contract was delivered to the defendant, and was put up for him by one Doyle; he having refused an offer by plaintiffs to have said machinery put up, for a sum named, and to guaranty its being well done. The defendant introduced his son John as a witness, who testified, that he had never been engaged about a steam-engine, before being engaged with the one bought by his father from plaintiffs; that when he took it in charge as chief engineer, he had only about eight days experience, acquired by serving under Doyle for that time; that he knew nothing about the amount of pressure the boilers of that engine would bear,—did not know what was meant by giving head to the steam, nor what were the parts of the steam-engine, nor their use, nor how to manage the packing and rings around the piston in the cylinder where the steam escaped from the cylinder, nor the value and cost of a cylinder, piston, piston-head, or fly-wheel, used in steam machinery, or of any other part of said machinery; that he had never known one to be sold, at either private or public sale; that he had never put up such machinery, but had seen that machinery put up by Doyle; that he had attended a saw-mill about three years, and had sufficient knowledge of mills of that description to say how many hands were necessary to attend. The defendant offered evidence tending to show that, after said machinery had been run about six months, and while the chief engineer (said John Burt) was absent, the fly-wheel broke; that another wheel broke about two months afterwards, when said chief engineer was again absent; that the packing around the piston-head was too small for the cylinder, thereby letting the steam escape; and that the piston-rod also broke. There was evidence, also, tending to show that defendant took said broken machinery to the 'Winter Iron Work,s' and there had

them repaired; that the packing was found, by the machinist who examined the cylinder, to be sound and perfect; that the way to manage packing in a cylinder, in order to prevent the escape of steam, was to screw out, by means of screws placed in it for that purpose, the rings composing it; that said machinist, by thus turning the screws a few times, made the packing fit, and that this was all that was done to make it fit. Said John Burt further testified, that he did not know the use of said screws, and had never made an attempt to screw out the packing. Defendant then asked him, what was the value of said machinery at public sale; and the witness answered, that it was worth about $1,000. Plaintiffs objected to this question, and excepted to the action of the court in overruling their objection."

"The defendant asked one Gotbell, a witness, if said machinery cost $3,200, and was warranted to cut 3,000 feet of inch boards in a day, and yet cut but 1500 feet in a day, how much would it be worth; and the witness answered, that it would be worth about one half of that sum. The plaintiffs objected to this question and answer, separately, and excepted to the overruling of their objections. The defendant asked said Gotbell, if he had ever known theories to fail; and the witness answered, that he had. The plaintiffs objected to this question and answer, separately; but the court overruled both objections, and allowed the answer to go the jury, to test the knowledge of the witness; and to each ruling plaintiffs excepted.

"The defendant introduced a letter, signed 'Gindrat & Co., per A. Warner,' on proof that it was in the handwriting of said Warner, who was clerk of the 'Winter Iron Works,' and only had authority to correspond for the corporation on such matters as shipments of machinery and accounts due, but had no authority to make or alter contracts. There was no other evidence of authority in Warner to write said letter; and there was evidence that he was, at the time of testifying, living in Montgomery, and out of the employment of said iron-works. The plaintiffs objected to the introduction of said letter alto-

gether, and particularly to" the sentence which is in italics; but the court overruled each of said objections, and allowed the whole of said letter to be read to the jury; and to these rulings of the court the plaintiffs excepted. Said letter was in these words:

"Montgomery, Feb. 14, 1851.

"MARTIN R. BURT, Esq.—

Dear Sir: We shipped to-day, pr. st. *Emperor*, 2 boilers, 30 in. diam., 30 feet long. *Mr. Doyle has not yet arrived ; will dispatch him to your mill as soon as he comes.* Have the kindness to send the boiler left at Watts' landing for you, to us, by the *Emperor*, next trip. Respectfully, GINDRAT & Co.,

*per* A. Warner."

"The defendant asked a witness, introduced by plaintiffs, if he and one Hilton had not been sworn in two other cases, in the circuit court of Montgomery, in which plaintiffs and third persons were parties, having no connection with the matters of this suit; and the witness answered, that it was so. The plaintiffs objected to this question and answer, and excepted to the overruling of their objection.

"The defendant asked said John Burt, how the new wheel and piston-rod, which had been made at said iron-works, and sent down to defendant's mill in charge of a man sent by said iron-works, had been put up; and the witness answered, 'In the same way that the other machinery had been put up.' The plaintiffs objected to this answer; but the court overruled their objection, and allowed said answer to go to the jury; and plaintiffs excepted.

"The defendant was allowed by the court, against the plaintiffs' objection, to prove that one Smith came to the mill, took out the saw, to put it in order, and put it back again, and that it did not then work so well as before,— this being after said machinery was repaired; and plaintiffs excepted.

"There was evidence tending to show, that one Lamb

was sent down by Gindrat & Co. to examine the manner in which said machinery was put up; and that said Lamb, while there, said that it was well put up. Neither one of the plaintiffs, nor any member of the firm of Gindrat & Co., was present when these declarations were made. The plaintiffs objected to the introduction of said Lamb's declarations as evidence, and excepted to their admission."

The rulings of the court above stated, and in the order stated, are now assigned as error.

ELMORE & YANCEY, for the appellants.

WATTS, JUDGE & JACKSON, *contra.*

STONE, J.—The bill of exceptions shows that John Burt had not the requisite knowledge to enable him to speak understandingly of the value of the machinery; and he should not have been allowed to give his opinion. 1 Greenl. Ev. § 440; Whipple v. Walpole, 10 N. Hamp. 130; Robertson v. Starke, 15 N. Hamp. 109.

The question propounded to the witness Gotbell, was also improper. It asked him to draw a conclusion from premises not justified by the law. Neither the cost of the machinery, nor the representations made as to its performance, could, in the form in which the question arose in this case, be considered by the witness in fixing its actual value. Its *value* was dependent on other considerations; and hence these should not have been made, to any extent, the basis of his opinion. There are decisions of this court which hold, that the contract price may be considered in ascertaining the damages.—Milton v. Rowland, 11 Ala. 732. That principle has nothing to do with this case.

The record does not inform us by whom the witness Gotbell was introduced. If he was on his direct examination, we are not able to perceive the pertinency or relevancy of the question, which inquired of him "if he had ever known theories to fail." On the other hand, if this question was propounded on cross examination, we cannot say, from anything apparent in this record, that it was improper. In Stoudenmeier v. Williamson, 29 Ala.

564–65, we employed the language, in reference to this subject, that "much must be left to the enlightened discretion of the presiding judge." See, also, Hopper v. Ashley, 15 Ala. 457. These rules will enable the presiding judge to rightly dispose of this question, should it arise on another trial.

The 4th and 8th assignments of error present substantially one and the same question. Both Warner and Lamb seem to have been, at most, agents of Gindrat & Co. The business of the former, so far as we are advised by the bill of exceptions, was "to correspond for the corporation, on such matters as shipments of machinery, and accounts due." We are not informed that he had any authority to make or alter contracts. In writing the letter which was read in evidence, he was engaged in no act, which will let in the declaration he made in relation to Doyle, as part of the *res gestæ*. We are not informed that Lamb's agency extended beyond the mission to ascertain if the machinery were correctly put up. This was not such an act as allowed the declaration of the agent to come in, in explanation of it.—See 1 Greenl. Ev. § 113; Brown v. Harrison & Robinson, 17 Ala. 774.

The 5th assignment of error is not well taken. The question was asked on cross examination; and under the authority of Stoudenmeier v. Williamson, *supra*, we cannot say the circuit court erred in allowing it to be answered.

The 6th assignment of error arises out of statements in the bill of exceptions which are made in terms so meager, and so entirely without the surrounding circumstances, that we prefer not to pass upon it.

The 7th assignment seems to be well taken. We are not informed that Smith was an engineer or machinist, or under whose employment he was acting. How the fact that he took out the saw and put it back, and the result, to-wit, that the saw did not then work as well as it did before, can legitimately be brought to bear on the issue formed in this case, we are left entirely to conjecture.

The judgment of the circuit court is reversed, and the cause remanded.