## BALTIMORE SUGAR REFINING COMPANY *vs.* THE CAMPBELL & ZELL COMPANY.

*Fraud—Jurisdiction of Equity to Annul a Contract Obtained by Fraud and Grant Other Relief.*

One who has been induced to enter into a contract by the fraudulent devices of the other party is entitled to apply to a Court of Equity for a rescission of the contract and other relief, and is not confined to an action at law for deceit.

Plaintiff, a manufacturing company, about to begin business, bought certain boilers from defendant.   In its dealings with defendant, plaintiff relied wholly upon the representations of its own engineers that the boilers made by defendant were good and adequate to the work. After the payment of most of the purchase money it was discovered that the boilers did not comply with the specifications and could not be made to do so, although plaintiffs' engineers continued to represent that the defects could be remedied.   Subsequently plaintiff learned that defendant's agent had bribed the engineers of the plaintiff to falsely and corruptly certify that the boilers were satisfactory, and thereby induced plaintiff to accept and pay for the same.   *Held,* that the plaintiff was entitled to maintain a bill in equity for the cancellation of the contract of sale, and for the recovery of the money paid thereunder and for an injunction restraining an action at law by the defendant to recover the balance of the purchase money.

Appeal from a decree of Circuit Court No. 2, of Baltimore City (WICKES, J.), dismissing the bill of complaint. The facts are set forth in the opinion of the Court.

. The cause was argued at the April term, 1895, and was afterwards reargued, by order of the Court, at this term, before McSHERRY, C. J., BRYAN, FOWLER, PAGE, ROBERTS, BOYD and RUSSUM, JJ.

*Charles Marshall* and *James H. Preston* (with whom was *John Gill, Jr.*, on the brief), for the appellant.

The sole question for this Court to determine is whether, under the circumstances set forth in the bill of complaint, a Court of Equity has jurisdiction of the case made by said bill. We ask the Court's attention to the actual case made by the bill of complaint and admitted by the demurrer. There are two things as to which the bill seeks relief. One is to have the contracts referred to in the bill, which were obtained by the bribery and corruption of the agents of the plaintiff, annulled, and the money that had been paid under these contracts decreed to be repaid ; and second, to restrain the defendant from prosecuting the suit at law which it had brought to recover under the contracts, or to institute or maintain any other suit based upon said contracts. So far as the bill seeks the annullment of the contracts and a decree for the return of the money that had been paid under them, it is to be observed that there is no suit now pending to recover that purchase money. There is a suit pending, brought by the defendant company against the plaintiff, to recover money alleged to be due under the contracts, and the use of those contracts for any purposes in the prosecution of that suit is sought to be enjoined. It is not claimed to enjoin the defendant company from prosecuting any suit whatever against the plaintiff, but only to enjoin the defendant company from making use in the pending suit, or any other suit, of the fraudulent contracts.

*This suit,* so far as it seeks to annul the contracts and recover back the purchase money paid under them, is the only suit now pending, and the jurisdiction of the Court to entertain a suit for that purpose is to be determined as a question of original jurisdiction of equity, and not as a question whether a Court of Equity will take jurisdiction of a controversy of which a Court of Law had previously taken jurisdiction. *The question as to whether equity has jurisdiction to give relief by annulling the contracts and decreeing a restoration of the money paid under the circumstances set forth in*

*the bill of complaint,* is now submitted for the first time for decision.

It will not be denied that in the case of a sale effected by fraud on the vendor, the vendor has two legal remedies. One of them is, to repudiate the contract, return the property and demand a return of whatever he has paid for it. The other is, to retain the property and bring an action to recover the damage that he has sustained by the fraud. The two remedies are entirely distinct. But the foundation of the first right of action, namely, the right to repudiate the contract, return the property and demand the return of the purchase money, is, *in a Court of Law,* absolutely dependent upon the ability of the vendee to put the vendor in *statu quo.* The vendee must be in condition, in order to maintain such an action at law, to restore the vendor to the condition in which he was at the time the sale was made. He must be in condition to restore the property, and unless he is able to restore the property purchased, the law affords no remedy to the defrauded vendee, except an action for deceit. See *Benjamin on Sales,* sec. 45.

In the present case, the allegation of the bill is that the vendor was deprived of the right to repudiate the contract and demand the repayment of the purchase money, *by the same fraud that brought about the sale.* He was induced to purchase the goods which he would not otherwise have purchased, by the fraudulent act of the president of the defendant company, and he was induced to deal with those goods after their defects had become apparent, by the same means of corruption, until the condition of the goods had become such that his power to restore them and demand the repayment of the purchase money, was lost. If this be true, and it is admitted to be so by the demurrer, it follows that the one legal remedy, the best and simplest remedy of the plaintiff, was lost by the fraud of the defendant, or rather plaintiff was deprived of the legal remedy, which would have given it full compensation in the simplest and most convenient manner, by the fraud of the defendant, if it be true

that the fraudulent act of the defendant's agent is to be imputed to the defendant company.   Undoubtedly, to prevent the defendant company from enjoying any benefits from the fraud of its officer or agent, and depriving it of such benefit as it had obtained thereby, is a proper subject for the jurisdiction of a Court of Equity, but in this case, if the fraud of the agent is to be imputed to the defendant company, then the defendant company has fraudulently deprived the plaintiff of the simplest, most direct and convenient legal remedy. It has disabled the plaintiff from making that restitution *in integrum*, which is the essential condition of maintaining *a suit at law*, to recover the purchase money that had been paid under the contract.

Now, it is submitted that justice demands that the plaintiff company shall not be prejudiced by losing the power of restoring the property, if that power has been lost by the fraud of the defendant company.   Justice would demand that the plaintiff, in this particular, shall be placed in the same position that it would have occupied had it discovered the fraud early enough to repudiate the contract, return the property and demand the return of the purchase money. It is submitted, that this relief is not in the power of a Court of Law.   A Court of Law must deal with the actual facts, and if the plaintiff in the case of a fraudulent sale has become disabled by the act of the fraudulent vendee from repudiating the contract, returning the property and demanding a return of the purchase money, a Court of Law can give no such relief.   A Court of Equity, however, can prevent the consummation of such a fraud and by its more flexible mode of proceeding and more liberal principles, do justice between the parties to such a case.   Justice requires that the plaintiff shall be treated as if he had discovered the defects of the property purchased and had offered to return the same, and had demanded a return of the purchase money *at the time when he was prevented from exercising this right by the advice and direction of his corrupted agents*, who induced him to deal with the property in such a way as to render it unfit to be returned to the fraudulent vendor.

Now, it is submitted that this right could not be accorded to him by a Court of Law, or by any action that he might bring in such a Court. It is only a Court which treats everything as done, that ought to have been done, and deals with parties who have done wrong as if they had not done wrong, but had done what they should have done, that can give any adequate remedy in such a case. A Court of Equity will, as against the party guilty of fraud, treat a thing as done which ought to have been done, and would have been done, had not the doing of it been prevented by fraud. *Moore* v. *Crawford*, 130 U. S. 128; *German Aged People's Home* v. *Hammerback*, 64 Md. 565; *Equitable Gas Co.* v. *Baltimore Coal Tar Co.*, 63 Md. 298; *London R. Co.* v. *S. E. R. Co.*, i Ch. (1892), 143. We submit that no authority can be found to support the proposition that a Court of Law could deal with the facts of this case in any form of action, so as to afford the full and complete remedy which a Court of Equity can by the application of equitable principles. We also submit that even if it were a case where there is a remedy at law, yet if that remedy has been embarrassed by the fraudulent conduct of the defendant, that fact alone will warrant a Court of Equity in taking jurisdiction. See *City of Natchez* v. *Vandervelde*, 31 Miss. 722.

It would seem to be extraordinary that a party can deprive another of his legal remedy, or seriously impair that remedy, and when sued in a Court of Equity, can plead that he is not liable in that forum because he has left *some* possible legal remedy to his opponent. In this case the bill shows that the vendee has deprived the vendor of so much of his legal remedy as depended upon the ability of the vendee to return the property, and that he has so deprived him of his right by fraud. When sued in equity, he pleads that the vendee ought to avail himself of what the vendor has been pleased to leave him of his legal remedy, and that the vendor should enjoy the fruits of the fraud by which he took away the most convenient and effective part

of the legal remedy. It is submitted that, in point of fact in this view, the defence is nothing but an appeal to the Court to enable the vendor to enjoy the fruits· of his fraud.

The only legal remedy suggested by which the vendee can recover back the purchase money paid under the contract in this case is by an action of deceit against the vendor. In that action it is said the vendee may recover all the money that he has paid under the fradulent contract, but it is very clear that this right requires that the vendee shall account for the actual value of the goods received. He could not recover all the purchase money that he has paid if he has not returned the goods · purchased, without accounting for the actual value of those goods.

It is evident, therefore, that the remedy at law which is suggested as a bar to this suit, requires that the Court shall give effect to the fraudulent contract of sale so far as to require the vendee to keep the goods which he does not want, and which he would not have bought but for the fraud, and account for the value of them. In other words, as matters stand, in order to give damages in an action of deceit, the Court of Law must necessarily give effect to the fraudulent contract of sale so far as to hold the vendee accountable for the value of the property so purchased. A Court of Equity, however, will not give any effect to the fraudulent contract of sale at all. It will treat it as if it had never been made, and will require the fraudulent vendor to take back his property as if it had been offered to him before it had become deteriorated by the use which the vendee was induced, by the same fraud, to make of it. In other words, the remedy in equity refuses to give any effect whatever to the fraudulent contract of sale and the fraudulent dealing with the vendee after his purchase. It treats the matter as if the contract had never existed, and remits the parties to their rights. It treats the vendee as if he were in condition to return the property and demand the repayment of the purchase money, while the Court of Law must treat him as having acquired the property and being chargeable with

it, because he had lost the power of restitution, although that loss had been occasioned by the fraud itself.

We ask that the fraud may be undone. That the . defendant company may be enjoined and prohibited from seeking to avail itself in any way of the fruits of that fraud, but we do not seek to restrain it any respect from seeking any relief at law to which it is entitled, except such relief as requires the enforcement to any extent of the fraudulent contract. In support of the propositions we respectfully refer to the following authorities : *The Panama and South Pacific Telegraph Co.* v. *The India Rubber Co., &c.*, 10 Chancery Appeal Cases, 551, 520, 521 ; *Boyce Executors* v. *Felix Grundy*, 3d Peters, page 210, where the whole question is fully considered ; *Watson and others* v. *Sutherland*, 5 Wallace, 580 ; *Morris* v. *Thomas*, 17 Ill. 114 ; *Hunt* v. *Danforth*, 2 Curtis, 603 ; *Richardson* v. *Brooks, &c.*, 52 Miss. 123 ; *Adam* v. *Newbigging*, 13 App. Cas. 308 ; *Redgrave* v. *Hurd*, 20 Ch. D. 1.

The position of an agent who acts for both parties to a contract without the knowledge of one of them, is likened to the case of a trustee who purchases at his own sale, and is subject to the same rules of law. It stands upon the same footing, and we submit that a sale made under such circumstances, where the agent of the vendee becomes the agent of the vendor without the knowledge of the vendee, whether as the result of bribery or of any other means used to induce him to act for both parties, the rule which declares such contracts void is exclusively a rule of equity ; that it is unknown at law, and that the only remedy for the party who complains of such a transaction is to have the contract rescinded by a Court of Equity. It does not present a case of concurrent jurisdiction at all. The mere fact that the same party has acted as agent for vendee and vendor does not avoid the contract in a Court of Law. A Court of Law will not pronounce the contract void for that reason alone. In a Court of Law such a contract, if proper forms have been observed, is good and valid, and if a party

desires to be relieved against it, he is obliged to go into equity.    In this case, if we went into the Court of Law and pleaded that the contract had been made as it was, by the same persons, acting as the agents for vendor and vendee, we should be told that we could not get any relief on that ground, but we must go into a Court of Equity and have the contract rescinded.    The Court is to determine whether · a transaction with reference to personal property or real estate, in which the same person has represented the buyer and the seller, shall stand or not, whether any advantage from such a transaction can be obtained and retained by the fraudulent agent, or by any person who was aware of the position in which he stood, and most of all, by any person who put him in that position.    It is submitted that in this view the case is one of purely original equity juris-diction, and the Court is referred to *Wardell* v. *Union Pacific Railroad Co.,* 103 U. S. 509 ; *Girod* v. *Michoud,* 4 Howard, 503 ; *Dillon* v. *The Connecticut Mutual Life Insurance Com-pany,* 44 Md. 336 ; *Kilgore* v. *Sutherland,* 130 U. S. 515 ; *Williams* v. *Marshall,* 4 G. & J. 376.

*Bernard Carter* (with whom were *George R. Willis* and *Charles H. Carter*) on the brief, for the appellee.

There can be no possible doubt upon all the authorities, in and out of Maryland, that the plaintiff, in an action at law, can recover of the defendant company every *dollar that it paid to it,* and without deduction of any kind ; and this, although the boilers, by the use made of them before the fraud was discovered, became deteriorated or different in condition from what they were when delivered to and ac-cepted by the plaintiff.    This recovery can be had in an action for deceit.    For although it may be conceded in this case, *ex gratia argumenti,* that where a buyer has been im-posed on by the fraud of the seller, and has paid the pur-chase money, he may treat the contract as null and void, and *in an action of money had and received,* recover back the purchase money ; but that he cannot so do unless he

is able to restore the thing purchased in a condition unchanged from what it was at the time of the purchase, even though the change of condition was made while the purchaser was ignorant of the fraud ; and although, therefore, it be conceded, *ex gratia argumenti* that, because the condition of the boilers was changed by the use made of them before the discovery of the fraud, the plaintiff could not, upon such discovery, rescind the contract for the fraud, and recover the money he has paid under said contracts in an action for money had and received ; yet it is undisputably settled that he *may*, in an *action of deceit*, recover his "*real damage*" and the "*fullest indemnity.*" *Clarke* v. *Dickson*, 1 Ell. Bl. & El. (96 E. Com. Law), 152 ; *Queen* v. *Saddler*, 10 House of Lords' Cases, 421 ; *Benjamin on Sales* (Perkins, 1 vol., ed. 1877, sec. 452, note A) ; *Buzzard* v. *Houston*, 119 U. S. 353 ; and in Maryland, *Groff* v. *Hansel*, 33 Md. 166 ; *McAleer* v. *Horsey*, 35 Md. 439 ; *Buschman* v. *Codd*, 52 Md. 209.

So far, therefore, as all that part of the relief sought by the bill in this case is concerned, which has to do with the recovery of what the plaintiff is entitled to recover *from* the defendant company, because of the fraudulent imposition of the worthless boilers, it is absolutely clear, that it has in the action for deceit "a plain, adequate and complete" remedy at law.

The second part of the relief asked for is, that the defendant company may be enjoined from prosecuting any suit against the plaintiff company, based on these contracts of purchase of said boilers, and from asserting any rights against the Sugar Company, by reason of those contracts, and may be restrained from further prosecuting until furhter order of the Court, the suit already brought in the Superior Court by the Boiler Company for moneys alleged to be due under said contracts, and for repairs and alterations of the boilers. Now, it is just as well settled, that where a contract of purchase is the fruit of *fraud* practiced on the buyer by the seller, the fraud can be set up as a defence to any suit

brought in a Court of Law upon that contract by the seller against the purchaser, as that such fraud will support an action of deceit by the buyer against the seller.    The most recent annunciation of this well-settled principle of jurisprudence by this Court is contained in *Home Life Ins. Co.* v. *Selig*, 81 Md. 204.    But it is there recognized as fully settled and familiar.    We refer to *Groff* v. *Hansel*, 33 Md. 165; *Scarlett* v. *Stein*, 40 Md. 512; *Insurance Co.* v. *Baily*, 13 Walace, 616; *Grand Chute* v. *Winegar*, 15 Wallace, 373.

As to the appellant's suggestion that the defendant company may not be liable in an action of deceit for the fraudulent acts of president, the question is *res adjudicata* in Maryland, as well as in the Supreme Court of the United States, that a corporation is liable in action for deceits, and in other actions in damages, for the fraud, deceits, misrepresentations, &c., of its agents in the scope of their employment, altogether irrespective of the question whether the company derived any benefit from the transaction or not. *Tome* v. *Parkersburg Bank*, 39 Md. 70; *Western Md. R. R.* v. *Franklin Bk. of Balto.*, 60 Md. 43.

It having been thus clearly shown that the plaintiff company has at law " a plain, adequate and complete " remedy at law for the assertion and maintenance of all its rights growing out of the alleged fraudulent contract of the defendant company, whether by way of a suit brought by said plaintiff, as by way of defence against any action which may be brought against it, by the defendant company, it results as a necessary consequence, that under the principles of jurisprudence recognized in Maryland, the Supreme Court of the United States, and generally in America, the plaintiff has no right to invoke the jurisdiction of a Court of Equity. The general principle, that whenever a party has for the maintenance of a *legal right* a plain, adequate and complete remedy at law, he cannot go into equity is a fundamental principle of jurisprudence recognized and enforced over and over again in Maryland. *Hecht* v. *Colquhorn*, 57 Md. 568; *Blain* v. *Brady*, 64 Md. 376.

The English doctrine, that the jurisdiction of equity exists in every case of fraud, whether the primary rights of the parties are legal or equitable, has been distinctly repudiated in nearly all the American States.   2 *Pomeroy·Eq. Jur.*, sec. 914; *Home Life In. Co.* v. *Selig*, 81 Md. 204; *Nat. Park Bank* v. *Lanahan*, 60 Md. 514.

The case made is that of a contract made on behalf of a corporation by *its agents*, who, in *acting for it*, and it alone, had, by the other party to the contract, been *bribed to betray* the cause of their principal by their actions taken on its behalf, and *with no pretense that* in what they did in the making or carrying out the contract, *they professed to act* for, or in *any way represent*, the other principal to the contract, which other principal was represented by its own active representative, its president, who, acting for his own principal, corruptly induced the agent of the other principal, still acting for and representing that other principal, in advising it to accept and pay for worthless boilers.   It is simply a case, therefore, for the application of the principle, that a corporation, *is at law*, liable in an action for deceit (or other appropriate action), for the *frauds* of its agents ; and whenever any person or corporation has been induced by such fraud to enter into a contract, there is a plain, adequate and complete remedy at law.   In this state of the case made by the bill, the counsel for the appellant endeavored to show that the Court below erred in sustaining the demurrer to the bill, and that a Court of Equity, in Maryland, has jurisdiction made by this bill, because, by reason of the acts of the president of the appellee, Engel and Kraf, who were already the agents of the appellee to *purchase* the boilers, became the *agents* of the appellee, *to represent* it in the *sale* of said boilers ; that, therefore, Engel and Kraf acted at the same time and in the same transaction, as agents of the buyer and of the seller.

Suppose the president of the Sugar Company had been sufficiently familiar with boilers to have been able to select them and determine whether they, when erected, performed

their guaranteed functions; and that he, on behalf of his company, had made the selection, made the contract, and when the boilers were put up, accepted them as up to the contract, and paid for them; and suppose, in order to get this action on his part, he had been bribed by the president of the Boiler Company, who acted for his company in making the contract. Would it be pretended, in the case just put, that the president of the Sugar Company was, within the rule of jurisprudence we are now discussing, acting as agent for both the seller company and the buyer company in the matters of said contract? Surely not. But he, though president, would, in respect to the making of the contract, be only an agent of the company of which he is president; and if he could not be considered in the case put, as acting as agent for both parties to the contract, Engel and Kraf could not be held to occupy such a position. If what we have said under this head is not sound, then, whenever a transaction of sale is conducted between two principals, by means of agents, and the agent of the seller bribes the agent of the purchaser to give more than the thing sold is worth, this bribery converts the acceptor of the bribe into an agent for both parties within the meaning of the rule that one man cannot be the agent of the seller and buyer at the same time.

Jurisdiction may be exercised by Courts of Equity to rescind written instruments in cases where they have been procured by false representations, or by the fraudulent suppression of the truth, if it appear that the rescission of the same is *essential* to protect the opposite party from pecuniary injury. Equity will rescind or enjoin such instruments where they operate as a cloud on the title of the opposite party, or where the instruments are of such a character that the vice in the *inception* of the same would be *unavailing* as a defence by the injured party, if the instruments were transferred for value into the hands of an innocent holder. Title deeds fraudulently procured may, *under such circumstances*, be decreed to be cancelled or reformed, as the case

may be, and bills of exchange or promissory notes may be enjoined and practically divested of their negotiable quality. Such jurisdiction also extends to the protection of letters patent against infringement, and is exercised in many cases to prevent waste, and for *many other judicial purposes*, but the rule is *universal* in the Federal Courts, that *if* the party has a good defence *at law*, and the remedy at law is as perfect and complete as in equity, an injunction will not be granted.

Now, unless the relief asked and *required* in a case is of some such nature as that here indicated, and where, on the contrary, it is simply the payment of money, or the defence to an action for money, and where the remedy at law is plain, adequate and complete, it is not possible to sustain the jurisdiction of a Court of Equity in a case growing out of a contract made by an agent, who assumes to act for both parties, though he may act in good faith, without tearing up by its very roots and absolutely destroying the fundamental proposition so often insisted on by this Court, that the jurisdiction of a Court of Equity cannot be invoked in a case where the right to be protected is a legal right, and the remedy at law is plain, adequate and complete.

ROBERTS, J., delivered the opinion of the Court.

The facts and circumstances out of which the controversy on this appeal has arisen are unusual, peculiar and interesting. The demurrer to the appellant's bill makes it necessary that the facts properly pleaded should be stated with such particularity as to give a clear understanding of the principles of law to be considered and announced. The bill alleges that the appellant was in the month of February, 1890, about to engage in the business of sugar refining in the city of Baltimore, and for the purpose of properly conducting its business, it became necessary to purchase certain steam boilers ; that in carrying on its business, it employed two of the appellees, Engal and Kraft, as engineers, believing them to be men of integrity and honesty, skilled in the

business of sugar refining, and well acquainted with the machinery required for the refining business ; that it was well known to the appellee company that the appellant did so depend upon its said agents, and that they were charged by it with the duty of selecting proper boilers for its use ; (3), that acting upon what it believed to be the honest advice and judgment of its said agents, it purchased from the appellee company, on or about the 12th of February, 1890, six boilers for the price of twenty-five thousand one hundred dollars, one-fourth payable in cash on delivery, and one-fourth payable when the boilers should be ready for testing, and the balance when the boilers were found to be such as they were guaranteed to be by the appellee company ; that each of said boilers was represented to be 250-horse-power, rating horse-power equal to 30 pounds of water evaporated per hour from feed-water 100 degrees Fahrenheit at 70 pounds pressure, and were guaranteed by said appellee company to be full power as rated to give dry steam, to be perfect in all parts, and with proper draft to be as economical as any other boiler, and to evaporate not less than 10 pounds of water per pound of good Cumberland coal as rated, and to evaporate twenty-five hundred pounds of water per hour for 10 consecutive hours ; (4), that six boilers were placed in the appellant's refinery by said appellee company, and were accepted by the appellant under the advice and approval of its said agents, and without any knowledge or suspicion on the part of the appellant that its said agents were not faithful to their duty, and that their advice and directions with reference to said boilers, and as to the acceptance of them by the appellant, were other than truthful and worthy of its confidence ; (5), that it was soon discovered that said boilers were defective ; that they were not such as they were represented and guaranteed to be, and that they failed to perform the service which the said appellee company had represented and guaranteed that they would perform, and that they were not for that reason suitable for the purpose of appellant's business ; but it avers

that it was induced to believe, by the advice and suggestion of its said agents, that said boilers could be made to perform the work required of them, according to said guarantee, and to answer the purpose for which they had been purchased, and for which they had been sold, by making certain changes in the arrangements for using them, suggested by said appellee and by said agents of the appellant. The appellant was thus led to continue to use said boilers in its business, notwithstanding the defects so discovered in them, and notwithstanding their failure to do the work they were guaranteed to do, and it incurred great expense in endeavoring to remedy the defects and short-coming of said boilers. (6), That, relying upon the advice and judgment of its said agents as to said boilers, it paid for them according to the contract, believing that the defects in them could be remedied and that they were in fact capable of being made to do the work they were guaranteed to be able to do, as set forth, and thus serve the purpose for which they were purchased ; (7), that, finding the quantity of steam guaranteed by said boilers less than was stated in said guarantee of the appellee company, and less than was necessary for the business of the appellant, and still believing that the failure of said boilers to render the service the appellee company had guaranteed that they would render proceeded from causes that could be removed, as the appellant was so advised that it could by its said agents, the appellant sanctioned the purchase made by said agents, Kraf and Engel, of two boilers on or about the first day of June, 1891, from said appellee company, said purchase being recommended by said agents, said two other boilers being represented by the appellee company to be each 250-horse-power, rated horse-power equal to 30 pounds of water evaporated per hour from feed water of 100 degrees Fahrenheit, at 70 pounds pressure, for the sum of eight thousand five hundred and sixty-six dollars and sixty-six cents ; the said appellee company guaranteed each of said boilers to be full power as rated, to give dry steam, to be perfect in all its parts, and

with proper draft, to be as economical as any other boiler ; that, relying upon the advice and judgment of its said agents, it paid for said two boilers all the agreed price, except about two thousand dollars, which it has not paid for the reasons hereinafter stated ; (8), that, acting under the advice and relying on the judgment of its said agents, whose fidelity and integrity it had no cause to distrust, it continued to use said eight boilers and to endeavor to make the same perform the service which said appellee company had guaranteed that they would perform, as the appellant was led to believe by its said agents could be done, thereby incurring great expense and great loss in its business by reason of what it afterwards discovered to be intrinsic defects of said boilers and their insufficiency to perform the service which said appellee company had guaranteed they could perform, until finally it became evident that said boilers were not fit for its use, because they could not do, or be made to do, the work which said appellee company had represented and guaranteed that they were capable of doing ; that it was forced to abandon the use of said boilers after it had paid for the first six in full, and had paid for the other two boilers all the purchase money except two thousand dollars, which payment it had made under the belief, as above stated, that said boilers could be made to perform the services guaranteed by said appellee company ; (9), that, acting under the advice and by the direction of its said agents in endeavoring to use said boilers as herein mentioned, it did not reject said boilers as soon as the defects thereof were first perceived, but continued to use them with the expectation that they could be made to serve the purpose of the appellant according to the guarantee of said appellee, as hereinbefore set forth, and when it finally became convinced that said boilers were altogether incapable of being made to produce the results mentioned in the guarantee of the appellee company, which results it was necessary that said boilers should be capable of producing in order to conduct successfully the business of the appellant, it noti-

fied the defendant, the appellee company, to remove the boilers, and claimed that said company should return the purchase money it had received for the same and make good to the appellant the loss it had suffered by reason of the premises ; but said appellee refused to do so, and instituted an action in the Superior Court of Baltimore City on the 27th of April, 1892, against the appellant to recover the balance of the purchase money of said two boilers, and a large amount claimed to be due by appellant under its contract for said boilers, for work done in attempting to make said boilers capable of performing the service set forth in said guarantee of the said appellee company, and for alterations and repairs of said boilers, which suit now stands for trial in said Superior Court ; (10), that said suit is based upon the contracts for the purchase of said eight boilers ; that said contracts were procured and the appellant induced to purchase said boilers and to retain the same, with the expectation that the defects thereof could be remedied, as hereinbefore set forth, by the gross deceit and fraud of the said appellee company ; that before any of said boilers were so purchased, and while the said agents of the appellant were considering the various boilers offered to it, the president of the appellee company, and one of the appellees, fraudulently and wickedly corrupted the said agents of the appellant, upon whom it relied in making the selection of proper boilers, and upon whose advice it relied in its subsequent dealing with the said boilers, as said president and the said appellee company well knew, and by bribing the said agents of the appellant with money secretly paid to said agents, fraudulently procured said agents to accept said boilers for the appellant, and to advise the purchase of the same, and also to advise the action subsequently taken with reference to the said boilers, as hereinbefore set forth, and thus grossly and fraudulently deceived and defrauded the appellant ; (12), that it did not suspect the honesty and fidelity of its agents until after it had become convinced of the worthlessness of said boilers and had been forced to

discard them, and that it has only recently been informed of the gross deception and fraud practised upon it by said appellee company.

These are facts, the truth of which the demurrer admits. The ground assigned in support of the demurrer is that a Court of Equity has not jurisdiction of the case made by the bill of complaint.   Most learned and exhaustive arguments, both oral and written, have been presented to this Court by the counsel for the respective parties.   The question is a narrow one, and relates chiefly to the practice which ought to prevail in Courts of Law and Equity in this State, where both jurisdictions prevail, but it is not always easily ascertainable exactly where the line of demarcation between the two jurisdictions lies.   Many nice distinctions are to be found in the decided cases upon the subject, and the solution of the question is not found to be without some difficulty.   It is well settled, however, that there are two grounds for the assumption of jurisdiction by Courts of Equity over causes of action that practically furnish an answer to every inquiry in respect to equitable jurisdiction. The first is, when a substantive right is *itself* of equitable origin ; secondly, where the right is legal, but the legal remedies are inadequate for the protection of the right. *Tiedeman on Equity Jurisprudence,* sec. 222.

The relief prayed is, that said contracts for the purchase of the eight boilers be declared null and void, and be annulled; secondly, that the appellee company be required to repay to the appellant the money received under said contracts, and all other money paid to the appellee company by the appellant under said contracts ; thirdly, that the appellee company be enjoined from prosecuting any suit and especially the suit pending in the Superior Court of Baltimore against the appellant based upon said contract, and from asserting in any Court any right against the appellant by reason of said contract and for general relief. The case is relieved of such difficulty in consequence of the absence of any controversy as to the facts.   This con-

troversy finds its origin in the purchase by the appellant, and the sale by the appellee company of eight boilers of certain horse-power, guaranteed to be full power as rated to give dry steam, to be perfect in all their parts, &c. The boilers were purchased at two different times. On the first occasion six were purchased for the sum of $25,100; and on the second two more were purchased for the sum of $8,566.66. The first six boilers were paid for in full as per terms of the first contract; and all but about $2,000 was paid under the second contract. The $2,000 was not paid because it was ascertained that said boilers were defective and unfit, and unable to perform the service which they were contracted to do and guaranteed to perform. If the question of the failure of the boilers to meet the requirements stipulated for in said several contracts was the only difficulty presented by this appeal, it would find easy solution. An action at law would be the appropriate remedy adequate and complete. The real question here lies at the very inception of the purchase of said boilers, and before a single boiler had been purchased. The terms of the contract play but a small part in the alleged scheme by which the fraudulent purchase was to be accomplished. The contracts on their face are fair to all seeming, but the allegations of the bill charge the utmost bad faith in the manner of the execution. It is stated in the second paragraph of the bill " that when the appellant was preparing to begin its business, manufacturers of steam boilers were desirous to obtain the contract to supply them, and among the number was the appellee company." Behind the appellant in this transaction stood its two employees, Engel and Kraft, competent engineers, skilled in the sugar refining business, enjoying implicitly the confidence of the appellant company, which depended entirely upon their judgment and skill in the selection of proper boilers for its business.

The bill also charges the material facts stated in the eleventh paragraph of the bill as shown in the eleventh item of the statement of facts hereinbefore set out. At

the time of the execution of said contracts the relation
which existed between Engel and Kraft and the appellant
was of a most confidential and fiduciary character.    Such
at least was the position the appellant believed them to
hold.    For all substantial purposes, in so far as the ap-
proval and acceptance of said eight boilers were involved,
Engel and Kraft stood in the position of the appellant,
clothed with complete authority to accept or reject.    With-
out the approval of said employees the boilers would not
have been accepted, and the appellee was well advised of
this fact, and being thus advised, it proceeds at once to ob-
tain control of the employees of the appellant, and in fact
of the appellant itself, and thus deprive it of the only means
which it had provided for its protection.    It is well settled
that an agent, employed to sell, cannot himself become the
purchaser, and an agent employed to buy cannot himself
be the seller.    And upon the same principle it is held, that
a contract made by one who acts as the agent of both par-
ties may be avoided by either principal.    *Story on Agency*,
sec. 211.    This is the state of the law in a case where no
fraud is imputed to either principal or agent.    But in a case
where fraud is superadded and practiced by the agents of
the innocent principal, and a fraudulent design secretly ac-
complished by the other principal through the corrupt instru-
mentality of unprincipled agents, there ought to be, we think,
but small doubt as to the Court which should take cognizance
of it.    Whilst it is true the appellee has brought suit in the
Superior Court seeking to recover the balance unpaid of
the purchase money for said two boilers bargained for under
the second or last contract, yet this determines nothing in
favor of the Superior Court's jurisdiction.    The question
of fraud is not asserted of the last contract alone, but by
the provisions of the bill it is made applicable alike to the
first and second contracts, and to each and every one of the
eight boilers manufactured under both contracts.    Equity
here supplies a more extended and adequate remedy, one
which avoids a multiplicity of suits, and restrains any suit

or suits which have been or may be improperly brought, whereas a Court of Law is remediless to cancel or annul any instrument.   Says Mr. Tiedeman, in his work already referred to :  " The Court of Law recognizes the right of the defrauded party to rescind the agreement or contract which he has been induced by fraud to enter into ; but rescission is not so much an affirmative remedy as an act of repudiation, serving as a defence to any attempted enforcement of the fraudulent contract.   The Courts of Law which do not have equity powers could not go further, and furnish to the defrauded party the protection of a cancellation or surrender of the written instrument which is based upon the fraud ; or furnish to him the affirmative remedy of reformation of such a contract, and a subsequent enforcement of the contract as reformed and purged of the fraud.   When the interest of the defrauded party requires either of these two remedies resort must be had to the Courts of Equity.   Cancellation and reformation are distinctively and exclusively equitable remedies."

There are some phases of this controversy of which a Court of Law might take cognizance.   But it is not enough that there is a remedy at law ; it must be plain and adequate, or in other words, as practical and efficient to the ends of justice, and its prompt administration, as the remedy in equity.   *Boyce's Executors* v. *Grundy*, 3 Peters, 215 ; *C. P. R. R. Co. and B. O. R. R. Co.* v. *Pa. R. R. Co.*, 57 Md. 271 ; *Wagner* v. *Shank*, 59 Md. 325–6.   Mr. Pomeroy in his work on Equity Jurisprudence, vol. 1, sec. 176, says : " That in cases where the primary right, interest or estate to be maintained, protected or redressed is a legal one, and a Court of Law can do as complete justice to the matter in controversy, both with respect to the relief granted and to the modes of procedure by which such relief is conferred, as could be done by a Court of Equity, equity will not interfere even with those peculiar remedies which are administered by it alone, such as injunction, cancellation and the like, much less with those remedies which are

administered both by it and by the law, and which there-
fore belong to its concurrent jurisdiction.   This principle,
however, must be understood as referring to the original
condition of law and equity, at a period when equity was
establishing its jurisdiction, and before the remedial powers
of the Law Courts had been extended by statutes, or en-
larged by the gradual adoption of equitable notions ; for
as will be more fully shown hereafter, the *present* power of
the Law Courts to grant complete relief does not, in gen-
eral, deprive equity of a jurisdiction which it had formerly
acquired, because the Law Courts then possessed no such
power.   But in order that the general principles may apply,
the sufficiency and completeness of the legal remedy must
be certain ; if it is doubtful, equity may take cognizance.
While the concurrent jurisdiction of equity thus depends
upon the inadequacy of legal remedies for the particular
controversy, or for the class of cases of which the particu-
lar controversy is an instance, it is impossible to define by
any single formula, what is the adequacy or sufficiency of
the remedy at law which shall prevent an exercise of the
equitable jurisdiction."   The case under consideration, we
think, affords apt illustration of the nature and character
of the facts and circumstances which go to make up a purely
equitable jurisdiction.   It is certainly not an obstacle in
the way of the jurisdiction of a Court of Equity that legal
questions are presented for its consideration, which might
also arise in a Court of Law.   So that when a Court of
Equity has taken jurisdiction of the whole subject-matter
of a controversy, the determination of which can be fully
and completely disposed of by its decree, a Court of Law
will not be permitted to assume a partial jurisdiction or in-
terfere with the jurisdiction in equity.   It is in such cases
that a multiplicity of suits arise, and largely tend to inter-
ferfere with the proper and due administration of justice.
As already stated, the prayer of the bills asks that said
contract be declared void and *be annulled.*   If they are to
be annulled, they will be cancelled, and cancellation is not

within the jurisdiction of a Court of Law, but it is distinctively and exclusively an equitable remedy.

We have weighed with care the allegations contained in the bill and are well satisfied that they are material and if substantiated are such as entitle the appellant to relief. For the reasons assigned the decree of the Court below must be reversed and the cause remanded for further proceedings.

> *Decree reversed with costs and cause remanded for further proceedings.*

(Decided March 25th, 1896.)