## A. L. SPENCER v. DULUTH AUTO SUPPLY COMPANY.[1]

December 15, 1922.

No. 23,098.

**Letter of defendant's manager to plaintiff not admissible.**

1. It was error to receive in evidence a letter written by defendant's manager which made a previously entered unenforceable oral contract enforceable, both the manager and plaintiff, to whom the letter was written, well knowing that the manager's connection with defendant was terminated or about to be shortly.

**Principal not bound by agent's admissions concerning part transactions not made in course of business.**

2. An agent may not bind his principal by admissions or declarations in respect to past transactions when not made in the usual course of business of the service.

Action in the district court for St. Louis county to recover $756.60 for breach of contract. The case was tried before Dancer, J., who at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for $696.66. From the judgment entered pursuant to the verdict, defendant appealed. Reversed.

*Fryberger, Fulton, Hoshour & Ziesmer*, for appellant.

*McManus & Morgan*, for respondent.

[1]Reported in 191 N. W. 39.

HOLT, J.

In May, 1920, plaintiff entered defendant's employ as a salesman. He now claims that before the end of that year he was hired by defendant's manager, F. F. Bolton, for the year 1921, at the salary of $160 per month, but was to draw each month only $110 on the salary account, and $40 per month additional for the upkeep of his auto when used in defendant's service. The balance of his salary as well as for the auto upkeep was to be paid at the end of the year. Defendant is a corporation whose entire capital stock in 1920, when plaintiff was employed, appears to have been owned and controlled by R. B. Whiteside. In February of 1921 this stock was sold to W. McFarlane. The latter did not find the business conducted to his liking and claims that, on July 28, 1921, he relieved the manager, Mr. Bolton, from his duties as such, though he was permitted to remain in the office and on the payroll for ten days thereafter to acquaint Mrs. Brown, who was appointed to take his place, with the status of the unfinished business. On October 10, 1921, plaintiff was discharged, and after the year expired he brought this action to recover the damages sustained because of the breach of the contract of employment and also for the balance due for the upkeep of the auto during the time it was used in defendant's service. The trial resulted in a judgment for plaintiff from which this appeal is taken.

The appeal turns upon the single question whether Exhibit C, a letter written by Bolton to plaintiff on July 29, 1921, was admissible. The letter was subscribed "Duluth Auto Supply Co., F. F. Bolton, Manager." The contract of employment, for a year, was required to be in writing, since it could not be performed within one year from the date of its making. Plaintiff's testimony is clear that it was an oral contract, made several days before the year of service began. There was received in evidence, over defendant's objection, a card, found in the files of defendant, containing notations by Bolton as to plaintiff's salary, and also a page torn from a personal memorandum book of Bolton's. Neither of which, singly or together, were competent to prove an employment, because not signed by the party to be charged. However, if the letter referred

to was properly received, the card and memorandum might be admissible in corroboration of the oral contract testified to.

It is not necessary that a memorandum of an oral contract be made and signed at the time the contract is made. The party to be charged may make such a memorandum subsequently. 25 R. C. L. p. 639; Browne, Statute of Frauds, § 352a. It is, however, elementary that a principal is not bound by acts or admissions of a one time agent made after the agency has ended. And Browne, Statute of Frauds, § 370b, states: "One who as agent has made an oral contract may not, after his agency has terminated, bind his former principal by reducing the contract or a memorandum of it to writing."

In the case at bar, the learned trial court, after much hesitation, admitted Exhibit C, and instructed the jury that a recovery for the alleged breach of the contract of employment could not be had, unless they could find that Bolton had not been discharged as manager when it was written and signed by him. Accepting the testimony most favorable to plaintiff as true, we, nevertheless, conclude as a legal proposition that Bolton was not authorized to bind defendant by the letter, Exhibit C, on July 29, 1921.

Defendant was virtually a one man corporation owned and controlled by McFarlane. Bolton as well as plaintiff knew that. Bolton also knew that McFarlane was dissatisfied with his management and that the same had terminted or would shortly terminate. He was asked this question: "You knew at the time you wrote that letter that Mr. McFarlane had told you the day before you were through, didn't you?" The answer was: "I presume it was the day before, although I did not keep track of which day Mr. McFarlane had our talk." Bolton also testified that on the twenty-eighth McFarlane said: "'I have decided to let you go.' I told him that was satisfactory. Asked him when he wanted me to go. He said he would like to have me stay ten days—ten days' notice." Previous to that talk Bolton signed all checks for defendant; after the twenty-eighth all checks issued by it were signed by others. He admits that he gave much if not all his time after this talk to going over the pending business of defendant with Mrs. Brown, Mr. Mc-

Farlane's daughter, the new manager. Plaintiff testified that he heard the rumor that Bolton had been discharged as manager or was soon to be and so he requested this letter from him. Both plaintiff and Bolton recognized McFarlane as the only one in authority, the real owner of the business.

It is plain from Bolton's own utterances that he knew his position and authority with defendant was not the same on the twenty-ninth as it had been previous to the talk with McFarlane on the twenty-eighth. The contract of employment he had made with plaintiff was unenforceable, because no memorandum thereof signed by defendant was in existence. He had no express authority to give vitality to such a contract by writing this letter, long after the hiring took place. No person with knowledge of what had transpired between Bolton and McFarlane would have the temerity to suggest that Bolton had either apparent or implied authority to write Exhibit C. It is perfectly clear from the situation that both plaintiff and Bolton knew and felt that McFarlane would not then knowingly permit such a letter to be given. Bolton not only wrote and signed this letter to plaintiff, but, on the same day, sent a similar letter to each of several employes of defendant whom he claimed to have hired under oral contracts for a year. He did this without McFarlane's knowledge. Indeed, the evidence tends to show that he took pains not to let any one then in active charge of defendant's business know of these letters, for the stenographer whose duty it was to preserve copies of letters from defendant testified that, when Bolton dictated the same to her, he told her they were personal letters, and the copies she made for filing were not returned by Bolton to the place from which it was her duty to take and file them. The whole performance connected with the origin of Exhibit C, and the similar letters to the other employes in defendant's employ, savors strongly of deceit. In no view of the evidence can the conclusion be reached that either plaintiff or Bolton, when the former asked for and the latter gave Exhibit C, believed or had any right to believe that it would be forthcoming had McFarlane, or any one else rightfully in control of defendant's business, known that it was in contemplation. The tenor of the letter reveals the fact that Bol-

ton knew that McFarlane did not think plaintiff had a contract for any future period.  Exhibit C reads:

"July 29, 1921.

Duluth, Minn.
    Mr. A. L. Spencer,
        Duluth, Minnesota.
My dear Spencer:

This letter will advise you that my connections with the Duluth Auto Supply Company will be severed within a few days.

I want to take this occasion to thank you for the good loyal support you have always given and cheerful manner in which you have always carried yourself.  From the number of kind remarks that I have heard from your customers, I can assure you that this is fully appreciated both by them, as well as the writer.

In leaving this company I bespeak your continued support for the company, and trust you may leave no stone unturned to produce all business possible; as we who have worked together laying the foundation are very anxious to see this business develop as it should.

From a remark passed by Mr. McFarlane during a conversation, I feel it my duty to suggest that you take up with him matters regarding the future; as he may wish to ask you to accept a different proposition for the balance of the year, instead of the proposition with bonus consideration under which you are now working.

Possibly, it would be well for me to mention at this time that my memorandum of our agreement is that you were to receive a drawing account of $110.00 per month, with a guarantee that your earnings for the year of 1921 would equal not less than $160.00 per month, and if it was a good year, and you were successful, you might reach $175.00 per month.

With reference to your expense account during the season when you are not using your car, and use the street cars; you were to turn in the actual expense incurred, as per daily expense cards, the same to be paid by the Duluth Auto Supply Company.

When you are using your car in your work, you were to receive an additional expense drawing account of $40.00 per month, and were to keep as close an account as possible of the car expense

while used in the Duluth Auto Supply Company's interest; and if the $40.00 per month does not cover same, the Duluth Auto Supply are to make good such deficit.

Again thanking you for the many kind considerations, and with best wishes for your future success and good health, I remain,

Yours very truly,

Duluth Auto Supply Co.

F. F. Bolton, Manager."

Because a person has authority to make a contract in behalf of a principal, it does not follow that, after the transaction is closed and time has elapsed, he may by admissions or written statements supply what is lacking to make the contract legal or binding upon the principal. It cannot well be claimed that it was in the usual course of Bolton's business as manager to make these contracts enforceable which for more than six months had been unenforceable. As bearing upon this proposition it is stated in Fairlie v. Hastings, 10 Ves. Jr. 123: "Letter by an agent is not evidence against the principal of a pre-existing agreement, though it may be of an agreement contained in that letter." Other cases lending support to this view are: Stone v. Northwestern Sleigh Co. 70 Wis. 585, 36 N. W. 248; Winter & Co. v. Burt, 31 Ala. 33; Chicago, B. & Q. R. Co. v. Riddle, 60 Ill. 534; Mazson v. Michigan Central R. Co. 117 Mich. 218, 75 N. W. 459; Giberson v. Patterson Mills Co. 174 Pa. St. 369, 34 Atl. 369, 52 Am. St. 823.

Some point is made that there was no action by the directors of defendant discharging Bolton as manager. As already stated the defendant was owned and controlled by McFarlane. Both plaintiff and Bolton knew and acted on the theory that McFarlane was the final authority.

The second cause of action for the balance due on auto upkeep does not depend altogether upon Exhibit C. But since it may be difficult to separate that from the amount claimed as damages on account of salary, and the exhibit may have turned the recovery on the second cause of action in favor of plaintiff, we think a new trial should be ordered.

The judgment is reversed and a new trial ordered.