## PETER GINTHER *vs.* THOMAS P. TOWNSEND, EXECUTOR, ET AL.

*Specific Performance—Misrepresentation as to Subject-Matter—Title of Vendor.*

Specific performance will not be decreed of a contract to purchase land when the defendant was induced to enter into it on account of misrepresentations as to the extent or boundaries of the land, although such misrepresentations were made in good faith and without knowledge on the part of the vendor of their inaccuracy.

Defendant agreed to buy a tract of land known as the M. farm, paid part of the purchase money, agreed to give a mortgage for the balance when the deed was executed to him, and entered into possession. At the time the agreement was made, the vendor pointed out the lines of the farm and said that it bounded for some distance on a county road. It was agreed that the deed to be executed would contain an accurate description, after a survey should be made. The survey disclosed the fact that the boundary of the farm fell short of extending to the county road by several hundred yards. *Held,* that on account of this misrepresentation as to the subject-matter, the contract of purchase should not be specifically enforced.

When a party whose interest in certain land is defeasible in the event of his death without issue, a contract to sell the land in fee simple is not enforceable by his heirs at law after his death.

*Decided November 18th, 1910.*

Appeal from the Circuit Court for Worcester County (JONES, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, PATTISON and URNER, JJ.

*H. L. D. Stanford* (with whom were *Joshua W. Miles* and *John W. Staton* on the brief), for the appellant.

*John H. Handy,* for the appellee.

BURKE. J., delivered the opinion of the Court.

The appeal in this case was taken from a decree of the Circuit Court for Worcester County. The decree directs a specfic performance of a contract for the sale of a certain farm known as the "Milbourne Farm." The bill of complaint was filed by Thomas P. Townsend, the executor of the will of Irving S. Townsend, the vendor. The bill alleged that on the 25th of January, 1906, the plaintiff's testator sold the farm to the defendant, and that he immediately entered into possession of the property under the contract, and has ever since been in possession of the same; that Irving S. Townsend tendered himself ready with his wife to execute a deed for the property to the defendant in pursuance of the contract of sale; that at the time the tender was made there was no incumbrance of any kind upon the property; but that the defendant refused to accept the deed for the farm; that the defendant had paid three hundred dollars on account of the purchase money, and had refused to make any further payment. The bill further alleged the death of Irving S. Townsend, leaving a widow and two children surviving him, and that the widow was ready and willing to release her rights in the property. It further alleged that the plaintiff had been appointed and qualified as the executor of the last will of the deceased vendor. The bill prays first, that the defendant may be compelled to specifically perform the contract, to accept a deed for the property from Catherine Townsend, widow and the plaintiff as executor of Irving S.

Townsend, to execute a mortgage upon the property to the plaintiff in accordance with the contract for the balance of the purchase money, and for general relief.

On the day the agreement of sale was made the vendor executed and delivered to the defendant the following memoranrum in writing:

"Pocomoke City, Md., Jan'y. 25, 1906. Received of Peter Ginther, of the State of Ohio, his check on the People's Saving Bank of Canton, Ohio, for the sum of Three Hundred Dollars ($300.00), which when paid will be in part payment of all that farm or tract of land situated in Atkinson Election District of Worcester County, Md., on the north side of Pocomoke River, and which is known as the 'Milbourne Farm' or by whatever name or names the same be known or called which I have this day sold to Peter Ginther for the sum of Two Thousand Dollars ($2,000.00), balance of purchase money to be paid as follows: five years' time is to be given on a mortgage which is to be given to said Townsend, his heirs or assigns, on receipt of a good and sufficient deed, clear of all encumbrance of every kind; the purchaser reserves the right to pay any part or all cash at any time before maturity. The purchaser is to have full and free possession of the hereby described property immediately.

"Witness my hand and seal.

"IRVING S. TOWNSEND.    (Seal)."

The answer admitted the agreement of purchase, and alleged that it was agreed between the defendant and the vendor that the deed should contain an accurate description of the property purchased, said description to be after survey and by courses and distances according to certain lines pointed out to the defendant by Irving S. Townsend before the sale as the lines of the property purchased, and that these lines pointed out were the basis of the purchase. It denied that the vendor ever tendered himself ready to execute a good and sufficient deed for the property in pursuance of the

contract, or that the defendant ever refused to accept from
the vendor a good and sufficient deed for the property. The
answer further alleged that the defendant is ready and will-
ing at any time, and has always been ready to fully perform
his part of the contract upon the receipt by him of a good
and sufficient deed for the property pursuant to the contract.

The vendor acquired title to the property sold under the
will of his mother, Elizabeth S. Townsend, dated 22nd of
May, 1886. The ninth item of that will reads as follows:
"I give and devise unto my son, Irving S. Townsend all that
farm known as "The Milbourne Farm;" but in case the said
Irving should die without leaving lawful issue living at the
time of his death, I give and devise the said farm known as
"The Milbourne Farm" unto my son John Glenn Townsend
in fee simple." The case was heard in lower Court upon
bill, answer and testimony, and the Court decreed that the
plaintiff was entitled to the relief prayed for in the bill, and
the property which it decreed the appellant should accept
was that embraced in a description filed in the case and made
by Levin H. Hall, a surveyor.

Mr. Hall testified that he made a survey of the property
by direction of Irving S. Townsend and according to certain
papers which Mr. Townsend gave him; that Mr. Townsend
said he had fulfilled his part of the agreement when the sur-
vey was made. He stated that he was to have a survey made
of Milbourne Farm, and that the farm should contain about
one hundred and ninety-five acres. After the survey had
been made, Mr. Townsend said he thought it was correct;
that he did not know the lines positively, but thought the
farm was of a larger circumference.

On the northeast side of the property embraced in the de-
scription there is a county road which leads from Pocomoke
City to Snow Hill, and when asked to state the distance the
nearest point of the land surveyed by him was to the county
road Mr. Hall said: "It may be an eighth of a mile; it may

be a quarter of a mile. I can't even approximate it, but it is certainly not within three or four hundred yards."

Mr. William E. Walton, a member of the real estate firm of F. H. Dryden & Co., testified that Irving S. Townsend placed the farm with that firm for sale. He further testified that he spoke to different persons about the farm, but never seemed to interest anyone until the appellant visited Maryland in the winter of 1905 or 1906, and that among other properties he showed him the Irving Townsend Farm. Mr. Ginther seemed interested in the property and wanted to see around it; to see where the lines were. "I told him that Mr. Townsend had represented that this tract came out to the public road, as I think the northeast corner of the property, and it followed some distance along with the road, and then went into the woods, and at the other side he thought about somewhere about seventy-five yards of the public road. This did not satisfy Mr. Ginther, so I took him to Mr. Townsend's home, but he was not at home, had gone over to the Oak Hill Farm, if I remember right, and wanting to see him we continued our course to this place, but met him on the road and tried to get further information from him in regard to his boundaries. He represented to Mr. Ginther just what he had done to me, but he did not know just where the line was, as I remember, between himself and his brother, but that he had been intending to have it surveyed and was going to have that survey and that the tract came out—he repeated the same to him that he did to me—that it came out to the public road and followed it·quite a distance, and at the other end goes into the woods, didn't follow the road all the way around, left the road and went in the woods at the other end and at the northwest corner would be about seventy-five yards from the public road." The witness further said that Mr. Townsend seemed to be indefinite in regard to the lines of the property, and that Mr. Ginther said he would want a survey made, and at that time Mr. Townsend said he intended to have a survey

made of that line; that the location of that line was the only
question in Mr. Townsend's mind about the property. Mr.
Walton also testified that after the survey had been made,
Mr. Townsend stated that he did not know regarding the
line, but that he had thought when he represented what he
did that the lines went to where he had told the witness.

Upon familiar principles applicable to suits of this char-
acter the facts which we have stated, and which are uncon-
tradicted, are sufficient to defeat a suit for a specific per-
formance of the contract. Irving S. Townsend could not
have given a good and sufficient deed for the property which
he had contracted to sell, because, under the will of his
mother, the item of which we have quoted, his title to Mil-
bourne Farm was not absolute, but defeasible. There was a
limitation over as to the farm by way of an executory devise
to John Glenn Townsend in the event of Irving S. Townsend
dying without issue. It is, therefore, apparent that Irving
S. Townsend could not execute a good and sufficient deed
clear of all encumbrance of every kind as he was obligated
by the contract to do. It is equally apparent, we think, upon
the undisputed evidence that the appellant under the decree
of the lower Court was not awarded what he in fact agreed
to buy. The subject matter of the contract was not described
in the memorandum of sale, but the evidence shows that what
he was decreed to take is in a material respect different from
that which he agreed to buy. This misunderstanding as to
location and extent of the property was due to a misrepre-
sentation no doubt innocently made by the vendor, who was
not accurately informed as to the boundaries of the land.
The principles to be applied to this state of facts are plain.
"So far as this element of misrepresentation is concerned it
is sufficient to defeat a specific performance, that the state-
ment is actually untrue so as to mislead the party to whom it
is made; the party making it need not know of its falsity,
nor have any intent to deceive; nor does his mere belief in
its truth make any difference. With respect to its effect

upon the specific performance of the contract, a party making a statemnt as true, for the purpose of influencing the conduct of the other party, is bound to know that it is true. In maintaining the defense to a suit for specific performance, the knowledge, belief, or intent of the party making the representation is wholly immaterial, and the question is not raised. The point upon which the defense turns, is the *fact* of the other party having been misled by a representation calculated to mislead him, and not the existence of a design to thus mislead. It follows, as a plain consequence of this general doctrine, that if a party makes a misrepresentation, whereby another is induced to enter into an agreement, he cannot escape from its effect by alleging his forgetfulness at the time of the actual facts." *Pomeroy on Contracts,* 2nd Ed., sec. 217.

Parol evidence may always be resorted to for the purpose of explaining the position of the parties and of the subject matter and other surrounding circumstances at the time of concluding the contract, so that the Court may be put into the position of the parties, may see with their eyes, and may understand the force and application of the language employed by them. In this manner the subject matter may always, as in the interpretation of a will or a deed, be ascertained and identified. For example, a contract by which the vendor agreed to sell "my mill," or even "the mill" would be made sufficiently certain, and the subject matter clearly identified, by proof that at the time the vendor owned a mill and but one mill. Such a description would then be as unmistakable as a most elaborate method of fixing and locating the structure. *Pomeroy on Contracts,* 2nd Ed., sec. 161.

Upon the testimony in this record we do not think that there can be a doubt about the fact that the appellant was misled in an important and material matter by the statements made to him by Mr. Townsend as to the boundaries of the farm.

In *Gurley* v. *Hiteshue,* 5 Gill, 223, it is said that the object in every suit for specific performance of a contract "is to carry into full effect, the exact objects and intentions of the parties, on the ground that where an honest and fair contract has been entered into by parties competent to engage without imposition or malpractice on either side, no advantage should be taken by either of any subsequent change of circumstances or of opinion which might alter, or be supposed to alter, the benefit resulting to the parties respectively. A Court of Equity, professing as it does to lend its aid exclusively to cases in which a claim can be conscientiously enforced, will never coerce the specific performance of a contract for a party who has not acted fairly, openly and without suppression of any important fact, or the expression of any falsehood. Whether with a fraudulent design or innocently, yet if a false impression has been conveyed and made the basis of the contract, this extraordinary jurisdiction of the Court will not be exercised by coercing a specific performance." In a suit by the vendor for the specific performance of a contract parol evidence is permissible to show that the contract was induced by fraud, mistake, or misrepresentation. *Balto. Permanent B. & L. Soc.* v. *Smith,* 54 Md. 202.

In *Dixon* v. *Dixon,* 92 Md. 442, JUDGE McSHERRY, after quoting with approval the language of VICE CHANCELLOR EMERY of New Jersey, in *N. Y. Life Ins. Co.* v. *Gilhooley,* 47 At. Reporter, 494, that "a purchaser in resisting a claim for specific performance of the contract, is entitled to show, by parol evidence or otherwise, circumstances making it unconscionable or unjust to grant this relief, which is purely equitable and which entitles him to insist that the vendor be left his remedy at law on the contract," said: "It may well be that there is a binding contract, but if it has been entered into under conditions not affecting its validity though of such a character as to indicate that it would be inequitable to specifically enforce it, a case would be made where a Court

of Equity would not only be justified in leaving the complaining party to his remedy at law, but where a proper exercise of the admitted discretion, with which the Court is clothed in such cases, would be rightly exerted by denying the specific relief sought under the bill. This means "not that the Court may arbitrarily or capriciously perform one contract and refuse to perform another; but that the Court has regard to the conduct of the plaintiff and *to circumstances outside the contract itself,* and the mere fact of the existence of a valid contract is not conclusive in the plaintiff's favor."

The memorandum of purchase, which we have quoted, entitled the appellant to take immediate possession of the farm. He has been ready and willing to perform all his obligations under the contract, and has done no act to waive his rights thereunder.

It follows that the decree appealed from must be reversed and the bill dismissed.

> *Decree reversed and bill dismissed with costs.*