### BALTIMORE COUNTY, MARYLAND ET AL. *v.* JOHN K. RUFF, INC. ET AL.

[No. 164, September Term, 1976.]

*Decided July 18, 1977.*

*Petition for reconsideration filed August 18, 1977; denied September 6, 1977.*

---

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Philip V. Tamburello, Assistant County Solicitor,* and *Harry S. Shapiro, Chief Assistant County Solicitor,* with whom was *J. Carroll Holzer, County Solicitor,* on the brief, for appellants.

*Richard W. Emory,* with whom were *Benson Everett Legg* and *Venable, Baetjer & Howard* on the brief, for appellees.

ELDRIDGE, J., delivered the opinion of the Court.

In the Circuit Court for Baltimore County the chancellor (DeWaters, J.) ordered the rescission of a bid of the plaintiff contractor to construct a building for the defendants. The basis for the order was that the contractor had made a "simple mathematical mistake in calculating the bid," and that, therefore, under the principles set forth in *Baltimore v. DeLuca-Davis Co.,* 210 Md. 518, 124 A. 2d 557 (1955), a court of equity should decree rescission. The defendants took an appeal to the Court of Special Appeals, and we granted a writ of certiorari prior to any decision by the Court of Special Appeals. The defendants' only substantial contention is that this is not an appropriate case for rescission based on a unilateral mistake, under the principles of *Baltimore v. DeLuca-Davis Co., supra,* because the contractor's mistake was not of such "grave consequences" that it would be "unconscionable" to enforce the bid as offered.

The defendants, Baltimore County, Maryland, and the Board of Trustees of the Community Colleges of Baltimore

County, advertised for sealed bids for the construction of a humanities classroom building for the Catonsville Community College. Bids were to be submitted by 2:00 p.m., February 6, 1975. The bid on behalf of the plaintiff contractor, John K. Ruff, Inc., was prepared by two of its employees, Mr. Hopkins and Mr. Robbins. It was not until 1:40 p.m. on February 6 that the contractor had received the last of the estimates from its subcontractors. Upon receiving the remaining subcontractor's estimate, Mr. Hopkins totaled Ruff's bid, but he neglected to include in the total a figure of $253,371.00 for labor costs. The contractor's final figure was then given, by telephone, to Mrs. Yeakle, secretary of John K. Ruff, Inc., who was at the Catonsville Community College. Mrs. Yeakle inserted the final figure in Ruff's bid proposal and submitted the proposal by 2:00 p.m. At approximately 2:30 p.m. Ruff was advised that its bid of $3,033,080.00 was the lowest bid.

By 3:30 p.m. on the same day, Ruff had discovered the $253,371.00 mistake and notified the project's architect. A short time later, Mr. Ennis, an engineer for Baltimore County, called Ruff and was also informed of the mistake. Mr. Ennis arranged a meeting for 10:00 a.m. the next morning, February 7, which was attended by representatives of Baltimore County, the Board of Trustees of the Community Colleges and Ruff. At the meeting Ruff explained how the mistake came about. As a result of that meeting, a letter was sent by Ruff to the defendants, giving formal written notice of the error along with a request to withdraw the bid and bid bond. The defendants did not grant Ruff's request, and, on February 19, 1975, Ruff was sent the contract for the humanities building. However, Ruff refused to sign the contract. The defendants then demanded that the Seaboard Surety Company perform under its bid bond, but the surety declined on the ground that Ruff did not breach its bid by refusing to sign the contract in light of the "patent, honest and obvious clerical mistake." By letter dated March 12, 1977, the defendants informed Ruff and Seaboard Surety that they were going to award the contract to the second low bidder and would hold Ruff and Seaboard Surety "responsible for the consequential damages."

Thereafter, Ruff initiated the instant action by filing a bill of complaint seeking the rescission of the bid and the return of the bid bond. The defendants filed a counterclaim against Ruff and, pursuant to Maryland Rule 314 c, a cross-claim against Seaboard Surety, alleging that they had awarded the contract to the second lowest bidder and demanding, pursuant to the liquidated damages provision of the bid proposal, the amount of $151,650.00 which represented 5% of the bid submitted by Ruff. After a full evidentiary hearing, the circuit court ordered the rescission of the bid and return of the bid bond and dismissed with prejudice the counterclaim and cross-claim.

In *Baltimore v. DeLuca-Davis Co., supra*, a contractor had made a clerical error in its bid for the construction of storm water conduits along a city highway. If there had been no error, the contractor's bid would have been $2,385,944.25. However, the clerical error amounted to $589,880.00, making the countractor's actual bid $1,796,064.25. The contractor became aware of its mistake as soon as it was announced as the lowest bidder, and it informed the city of the mistake within five days. The facts also show that if the contractor had been held to the bid, it would have incurred a loss of over $400,000.00 while its net worth was only $82,000.00. In addition, there was a city ordinance making such bids irrevocable. This Court, after an extensive review of the authorities, held that despite the ordinance a court cf equity should decree rescission of the bid and a return of the deposit. The Court, speaking through Judge Hammond, concluded (210 Md. at 535):

> " . . . [W]e agree with the views of the Court in the *McGraw* case [*State of Connecticut v. F. H. McGraw Co., Inc.*, 41 F. Supp. 369 (D. Conn. 1941)], from which we have quoted above, that the proper effects of the charter requirements are to assure the municipality that a bidder will be relieved of his obligation only when it is legally justifiable, and that it is legally justifiable when a court of equity is satisfied by clear, cogent and convincing proof that an honest, clerical or mechanical error, not the

result of gross or culpable negligence, made the bid that of the bidder in form only but not in actual intent or substance, and the gain of the other party would be unconscionable if advantage were taken of the mistake and the loss would only be that of the bargain if the mistake were nullified. In such circumstances, the blundering bidder may be relieved in equity of his obligation created at law by his bid and deposit, and this is true even though the bid was submitted to a public body under a statute declaring the bid to be irrevocable and providing for the forfeiture of the deposit."

The circumstances under which rescission would be decreed were listed as follows (210 Md. at 527, emphasis supplied):

"The general rule as to the conditions precedent to rescission for unilateral mistakes may be summarized thus: 1, *the mistake must be of such grave consequences that to enforce the contract as made or offered would be unconscionable;* 2, the mistake must relate to a material feature of the contract; 3, the mistake must not have come about because of the violation of a positive legal duty or from culpable negligence; 4, the other party must be put *in status quo* to the extent that he suffers no serious prejudice except the loss of his bargain."

Turning to the present case, Baltimore County and the Board of Trustees of Community Colleges focus upon the first of the conditions precedent to rescission listed in *DeLuca-Davis,* namely that the mistake must be of such grave consequences that to enforce the bid would be unconscionable. The defendants refer to the facts of *DeLuca-Davis* where, in light of the contractor's assets, enforcement of the bid would have put the contractor into bankruptcy or would have rendered him insolvent. The defendants then point to the evidence in the instant case which showed that, notwithstanding a clerical error of $253,000.00, the contractor "had the pecuniary net worth and pecuniary ability to perform under its proposal of $3,033,000; . . . that Ruff could do the work at the bid price of

$3,033,000 without being rendered insolvent or bankrupt." The defendants go on to argue that, as a matter of law, it is error for a trial court to find that enforcement of a bid would be "unconscionable" if the contractor would not be rendered bankrupt or insolvent by such enforcement.

We cannot agree with the defendants that enforcement of a bid can as a matter of law be deemed "unconscionable" only where the contractor would be rendered bankrupt or insolvent. No case has been cited to us, and we are aware of none, where a court has taken such a position. It is true that the Court in *DeLuca-Davis*, in holding that enforcement of the bid there would be unconscionable, did rely on the fact that the contractor would be thrown into bankruptcy by enforcement. However, nothing in the *DeLuca-Davis* opinion suggests that bankruptcy or insolvency is a necessary requirement of unconscionability. While it is a circumstance which may make the enforcement of a bid unconscionable, there may be other circumstances as well which would make it unconscionable to enforce a bid resulting from a unilateral clerical mistake.

The only case of which we are aware which deals with a contention like that of the defendants is *President & Coun. of Mount St. Mary's Col. v. Aetna C. & S. Co.*, 233 F. Supp. 787 (D. Md. 1964), a diversity of citizenship action governed by Maryland law. In *Mount St. Mary's*, a contractor had mistakenly failed to include the price of furniture and kitchen equipment in his bid for the construction of a student union and dormitory at a college. The contractor's omission amounted anywhere from $140,000.00 to $169,000.00 out of a total bid of $1,389,450.00. The United States District Court, in an opinion by Judge Thomsen, applied the principles of *DeLuca-Davis* and held that the contractor was entitled to rescission of the bid and that the surety was not liable on the bid bond. With respect to the college's reliance upon the fact that enforcement would not render the contractor insolvent, the court stated (233 F. Supp. at 798):

> "The fact that the loss to Miller, Inc. would probably not have been so great as to put it out of

business is an element to be considered, but it is not controlling. The mistake was substantial and ,material."

We agree with Judge Thomsen in the *Mount St. Mary's* case that whether enforcement of a bid would render the contractor insolvent is a factor to be considered in determining unconscionability, but that it is not controlling. Unconscionability depends upon the various circumstances surrounding each particular case. In the instant case, we believe that the chancellor was warranted in concluding that to make Ruff go through with its bid would be unconscionable.

*Judgment affirmed.*
*Appellants to pay costs.*