RONALD E. CREAMER, Indiv. & t/a Weinberg & Green
ET AL. *v.* CHARLES HELFERSTAY ET AL.

[No. 7, September Term, 1981.]

*Decided August 4, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*J. Alan Galbraith,* with whom were *Brendan V. Sullivan, Jr., Michael S. Sundermeyer* and *Williams & Connolly, Wilbur D. Preston, Jr., Richard C. Whiteford, M. Natalie McSherry* and *Whiteford, Taylor, Preston, Trimble & Johnston* on the brief, for appellants.

*David Freishtat,* with whom were *Paul Mark Sandler* and *Freishtat, Schwartz & Sandler* on the brief, for appellees.

ELDRIDGE, J., delivered the opinion of the Court. MURPHY, C. J., concurs in the result and filed a concurring opinion at page 133 *infra.*

We granted certiorari in this case to resolve important questions concerning some of the grounds for rescission of a contract under Maryland law.

Several limited partners of a real estate partnership which had invested in a land venture known as the Route 29 — Lewis Property Partnership, brought suit in the Superior Court of Baltimore City against the Baltimore law firm of Weinberg & Green and several of its partners individually, alleging negligent breach of fiduciary duties, breach of contract and fraud.[1] These allegations arose out of the law firm's concurrent representation of the real estate limited partnership and of the general partner thereof (who is not a party to this case). In essence, the limited partners claimed that Weinberg & Green's representation of the general partner personally, and its relationships with him in busi-

---

1. Hereinafter, the plaintiffs will be referred to collectively as the "limited partners," and the defendants, collectively, will be referred to as "Weinberg & Green," or "the law firm."

ness dealings, had created a conflict of interest and had resulted in financial loss to the limited partners. The limited partners alleged that Weinberg & Green had had a duty to disclose the full extent of its relations with the general partner and that, had it made this disclosure, the limited partners would not have invested in the partnership. The limited partners sought compensatory damages and, under the fraud count, punitive damages.[2] Weinberg & Green counterclaimed for damages, alleging that, to the extent that the law firm caused the limited partnership to have lost money, the loss was due to the failure of certain of the limited partners to have disclosed information to the law firm which would have enabled the venture to have been profitable.

Responding to the suggestion of the trial judge presiding in the case, the parties negotiated a partial settlement agreement which was signed on October 24, 1979. The limited partners agreed to dismiss with prejudice the fraud count and to release Weinberg & Green from all other claims of fraud or conspiracy relating to the real estate partnership. Weinberg & Green agreed to dismiss its counterclaim, and "to enter into good faith settlement negotiations" on the negligence and breach of contract counts. The following provision was also included in the written agreement:

> "This agreement ... constitute[s] the entire agreement of the parties. There are no additional promises made by the parties except those expressly set forth in this agreement."

Pursuant to the settlement agreement, the fraud count and the counterclaim were dismissed. Thereafter, the parties met three times to negotiate on the remaining counts, and at the third meeting Weinberg & Green offered $80,000 in settlement. The limited partners rejected this offer, and, as found by the trial court, their counsel

---

2. For more extensive discussion of the factual background, *see* the opinion of the Court of Special Appeals in this case, Creamer v. Helferstay, 47 Md.App. 243, 244-252, 422 A.2d 395 (1980).

"immediately announced his intention to seek rescission [of the settlement agreement] and acted upon that intention the following day by filing the motion for appropriate relief."

The limited partners argued that the settlement agreement should be rescinded and the fraud count reinstated because, they alleged, Weinberg & Green had intentionally made "false representations" during the negotiations which had induced the limited partners to enter into the settlement agreement. Specifically, the limited partners alleged that during negotiations they had repeatedly stated that any settlement would have to be in the range of $275,000 to $550,000.[3] Weinberg & Green, however, refused during those negotiations to agree expressly in writing or orally to a specific settlement range. Nevertheless, the limited partners claimed that, by certain statements, the law firm had caused them to understand that, even though the settlement agreement provided only for "good faith settlement negotiations," in reality the agreement was different. According to the limited partners, the law firm represented that, as soon as the fraud count was dropped, the law firm would offer to settle for between $275,000 and $550,000.[4]

---

3. The trial judge indicated that the $275,000 figure allegedly represented an estimate of the amount which would be recovered if the limited partners were successful on the negligence and breach of contract counts. At the other end of the settlement range, $550,000 represented an amount which would have made the limited partners "substantially whole"; it was an amount sufficiently large to compensate the limited partners for their actual losses, as well as to pay their counsel who was conducting this litigation for a fifty percent contingency fee. The larger amount also supposedly represented an estimate of the potential costs of defense and loss of productivity to Weinberg & Green which would have resulted from a trial on the merits.

4. The limited partners reached this conclusion, according to the trial court, because they had allegedly told the law firm repeatedly that they would not drop the fraud count unless they could be assured of obtaining more in settlement than they would be able to obtain as the result of a successful judgment on the negligence and breach of contract counts alone. But when the limited partners had made known these conditions and this request for assurances, the law firm had refused them. Instead, the limited partners claimed, the law firm then had told them that the reason it would not either include a settlement range or give any express assurances that it would settle for more than $275,000, was not because it was not prepared ultimately to acquiesce to the supposed settlement needs of the limited partners, but rather, because it did not wish the public to think that it had negotiated while the fraud count was pending. Then, in response to the

In an opinion, the trial court found that there was "no evidence of intentional misrepresentation" by Weinberg & Green.[5] However, the court did find that Weinberg & Green had made an "honest misrepresentation" which had induced in the respondents the belief that Weinberg & Green intended to negotiate a settlement in the $275,000 — $550,000 range. The court further found that the limited partners had entered into the settlement agreement in reliance upon this misrepresentation. The trial court entered an order rescinding the settlement agreement and reinstating the counterclaim and the fraud counts. The trial judge based his order of rescission on the alternative grounds of misrepresentation and unilateral mistake. Weinberg & Green appealed to the Court of Special Appeals which affirmed on the ground of unilateral mistake. *Creamer v. Helferstay,* 47 Md.App. 243, 422 A.2d 395 (1980).[6] The law firm then filed a petition for a writ of certiorari, arguing that neither misrepresentation nor unilateral mistake furnished grounds for rescission of the settlement agreement under the circumstances of this case.

## I.

Before discussing the substantive rulings of the trial court and of the Court of Special Appeals, however, a procedural matter must be considered.

The appeal in this case was taken from the following order of the trial court:

---

partners' continued requests for assurances, and to their expressions of skepticism with regard to the firm's explanation of why it would not make any express oral or written promises, the law firm had stated: "Can't you read between the lines?" and "Can't you understand what it is we're trying to tell you?" With regard to the limited partners' reluctance to dismiss the fraud count so long as no dollar settlement range was included in the agreement, the law firm had stated: "You don't need leverage."

**5.** The trial court stated that not only was there no intentional misrepresentation, but that in fact the limited partners had not "pressed" this argument.

**6.** The appeal was authorized under the so-called "collateral order" doctrine. Clark v. Elza, 286 Md. 208, 406 A.2d 922 (1979). *See* Cohen v. Beneficial Loan Corp., 337 U.S. 541, 545-547, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); Peat & Co. v. Los Angeles Rams, 284 Md. 86, 92, 394 A.2d 801 (1978).

"[I]t is this 31st day of December, 1979, by the Superior Court of Baltimore City ORDERED that:

1. The contracts which were executed by the parties on October 24, 1979 are rescinded; and

2. The orders filed October 24, 1979 dismissing the fraud count of the declaration and the counterclaim and all copies of such orders thereafter filed are stricken."

At oral argument, we raised the question of whether, in an action at law, a trial court has the power to affirmatively order the rescission of a contract. Although raised in the trial court, the parties did not raise this issue on appeal. Nevertheless, it is the type of matter which we ordinarily address when it comes to our attention even though not raised by the parties. *See, e.g., Sec., Dep't of Human Res. v. Wilson,* 286 Md. 639, 644-645, 409 A.2d 713 (1979), and cases there cited; *Maryland Nat'l Capital Park & Planning Comm'n v. Washington Nat'l Arena,* 282 Md. 588, 594, 386 A.2d 1216 (1978) (concerning "the power of the chancellor . . . to award relief . . .").

The original action brought by the limited partners against the law firm was at law for damages. The procedural distinctions between actions at law and suits in equity are, of course, still preserved in this State. In the counties, the circuit courts maintain separate law and equity dockets. *See Dormay Corp. v. Doric Co.,* 221 Md. 145, 151, 156 A.2d 632 (1959); *see generally Brown, The Law/Equity Dichotomy in Maryland,* 39 Md. L. Rev. 427 (1980). In Baltimore City, the Superior Court is vested with the power to adjudicate only actions at law, while the Circuit Court of Baltimore City has exclusive authority to hear and determine suits in equity. Maryland Constitution, Art. IV, §§ 28, 29.[7]

---

7. Article IV, §§ 28, 29 of the Maryland Constitution provide in full:

"Section 28. Jurisdiction of Superior Court of Baltimore City, Court of Common Pleas and Baltimore City Court.

The Superior Court of Baltimore City, the Court of Common Pleas, and the Baltimore City Court shall each have concurrent jurisdiction in all civil common Law cases, and concurrently, all

It is beyond dispute that the authority of a court to rescind or cancel a contract is purely equitable.[8] *See, e.g.,* 1 J. Pomeroy, *Equity Jurisprudence,* §§ 110, 112 (5) (5th ed. S. Symons 1941). Consequently, this Court has long held that a law court has no power to order a contract rescinded or cancelled. *Ridgley, Exec. v. Beatty,* 222 Md. 76, 85-86, 159 A.2d 651 (1960); *Conner v. Groh,* 90 Md. 674, 683-684, 45 A. 1024 (1900); *Refining Co. v. Campbell & Zell Co.,* 83 Md. 36, 55-58, 34 A. 369 (1896). The Superior Court of Baltimore City was clearly without the power to order rescission of the settlement agreement in this case; the order appealed from must be vacated, and the case must be remanded.

Although a law court in Maryland may not ordinarily grant affirmative equitable relief absent statute or rule, it is competent to recognize defensive pleas on equitable grounds under Maryland Rule 342 d. 1. That rule permits any party to an action at law, by way of defense, to plead facts which

---

the jurisdiction which the Superior Court of Baltimore City and the Court of Common Pleas now have, except jurisdiction in Equity, and except in applications for the benefit of the Insolvent Laws of Maryland, and in cases of Appeal from judgments of the District Court in said City, whether civil or criminal, or arising under the ordinances of the Mayor and City Council of Baltimore, of all of which appeal cases the Baltimore City Court shall have exclusive jurisdiction; and the said Court of Common Pleas shall have exclusive jurisdiction in all applications for the benefit of the Insolvent Laws of Maryland, and the supervision and control of the Trustees thereof."

"Section 29. Jurisdiction of Circuit Court of Baltimore City.

The Circuit Court of Baltimore City shall have exclusive jurisdiction in Equity within the limits of said city, and all such jurisdiction as the present Circuit Court of Baltimore City has; provided, the said Court shall not have jurisdiction in applications for the writ of *habeas corpus* in cases of persons charged with criminal offences."

Maryland voters have ratified a Constitutional amendment repealing §§ 28, 29, and substantially modifying the judiciary of Baltimore City to create a single circuit court. These amendments, however, do not become effective until January 1, 1983. Chapter 523 of the Acts of 1980.

8. Court-decreed rescission is to be distinguished from the situation in which a contract is rescinded extrajudicially by a party (who then might be sued for breach), or by mutual agreement of both parties. In either case, the remedy of rescission is neither requested nor granted by the court. *See* 1 J. Pomeroy, *Equity Jurisprudence,* § 110 (5th ed. S. Symons 1941); J. Bishop, *Law of Contracts* §§ 830-832 (1887).

could entitle him to relief on equitable grounds in a court of equity.[9] If the law court agrees that in equity the contract would be rescinded, although it does not have the power actually to rescind the contract, the law court will simply hold it unenforceable and deny relief. *See Refining Co. v. Campbell & Zell Co., supra,* 83 Md. at 56, pointing out that under the statutory predecessor to Rule 342 d. 1., where grounds for rescission of a contract exist, a law court can recognize the grounds " 'as a defense to any attempted enforcement' " but that the law court " 'could not go further, and furnish . . . the protection of a cancellation or surrender of the written instrument . . . .' " *See also Gladding v. Langrall, Muir & Nopp'r,* 285 Md. 210, 213 n. 4, 401 A.2d 662 (1979); *Whitaker v. McDaniel,* 113 Md. 388, 78 A. 1 (1910).[10]

On remand then, the limited partners will not be able to obtain an order of rescission in the Superior Court as they had originally sought. However, they may be able to invoke

---

9. Rule 342 d. 1. provides:

"d. *Special Pleas — Additional Provisions.*

1. On Equitable Grounds.
(a) When Allowed.

A party to any action at law in which he, if judgment were obtained, would be entitled to relief against such judgment on equitable grounds, may plead the facts which entitle him to such relief by way of defense.

(b) Form.

Such plea shall begin with the words 'for plea on equitable grounds' or similar words.

(c) Court May Strike Out.

If it shall appear to the court that such equitable plea cannot be dealt with by a court of law so as to do justice between the parties, the court shall order the same to be stricken out on such terms as to costs as may be reasonable.

10. There is some indication in our cases that where a defense to a contract is based upon mutual mistake, where it is contended that the contract did not express the intent of either party, then a plea under Rule 342 d. 1. and its predecessor statute will not lie, and that only an equity court can grant relief, such as reformation. Housing Auth. of College Pk. v. Macro, 275 Md. 281, 340 A.2d 216 (1975); Nydegger v. Gitt, 125 Md. 572, 94 A. 157 (1915). We need not consider this issue in the instant case, as no "mutual mistake" within the meaning of our cases was found by the trial judge or shown by the evidence.

Rule 342 d. 1. and make the argument or file a replication that grounds exist upon which a court of equity would rescind the settlement agreement.[11] The Superior Court, if it agreed with the limited partners' contention, could refuse to enforce the settlement agreement and treat it as invalid, although the court could not formally order the agreement rescinded or cancelled. In other words, in such a situation, "the remedy of cancellation is not expressly asked for, nor granted by the court of law, but . . . its effects are indirectly obtained in the legal action." J. Pomeroy, *supra* at § 110.

Although the order appealed from is being vacated on the procedural ground that a law court has no power to affirmatively order the rescission of a contract, we shall proceed to discuss the merits of the order, in light of the trial court's findings, in order to provide guidance upon remand in the event that the limited partners invoke Rule 342 d. 1.

## II.

The trial court initially held, as previously indicated, that an "honest" and "unintentional" misrepresentation, such as that which it found the law firm to have made regarding the type of settlement it would offer, is a ground for rescinding a contract. It is true that an unintentional "material misrepresentation of fact . . . may warrant rescission by a Court of equity of a contract induced thereby." *Shulton, Inc. v. Rubin,* 239 Md. 669, 686, 212 A.2d 476 (1965). *See also,*

---

**11.** Under Maryland Rule 312 a., it is no longer necessary for a plaintiff to file a formal replication to a responsive pleading. Unless required by an order of the trial court, "a replication to a responsive pleading may, but need not be filed."

It is now clear that a replication may be filed, or a defense to a responsive pleading made, on equitable grounds under Rule 342 d. 1. Under the predecessor statute to the rule, Ch. 547 of the Acts of 1888, a "defendant" was authorized to file a plea on equitable grounds. Poe took the position that the statute authorized a replication on equitable grounds where a plea set up an equitable defense, but probably not otherwise, although he stated that "[t]he statute is perhaps defective in this particular." 1 Poe, *Pleading and Practice,* § 688A (5th ed. H. Tiffany 1925). *Cf. Nelson v. Chesapeake Constr. Co.,* 159 Md. 20, 149 A. 442 (1930). When Rule 342 d. 1. replaced the statute, the word "defendant" was changed to a "party." Consequently, any prior doubts concerning the right of the plaintiff to make an equitable defense were removed.

*e.g., Clark v. Kirsner,* 196 Md. 52, 56, 74 A.2d 830 (1950), and cases there cited; 12 S. Williston, *Contracts* §1500 (3d ed. Jaeger 1970); *Restatement (Second) of Contracts* §§ 162, 164 (1981). However, the trial court overlooked an important principle made clear by the cases regarding rescission for misrepresentation absent fraud or other intentional culpable conduct. That is, in order to be a ground for rescission, the alleged innocent misrepresentation inducing the signing of the contract may not vary or contradict an express term of the written instrument.

This Court has consistently held that no relief from a contract may ordinarily be obtained on the basis of prior extra-contractual terms. In *Thomson v. Gortner,* 73 Md. 474, 21 A. 371 (1891), the Court held, *inter alia,* that a written contract for the sale of "my packing of sugar corn" could not be varied by parol evidence of an alleged prior verbal representation that the corn would be of the quality of a sample. The Court said (*id.* at 480) (emphasis by the Court):

> "In regard to the *quality* of the corn, the contract simply required that it be of Gortner's '*packing of sugar corn,*' and then the price is fixed. If the corn delivered was of *his packing,* and was *sugar corn,* then, in the absence of fraud, the contract was gratified, and the attempt to give it any higher or different standard by parol evidence, is an attempt to add to the terms of the written instrument."

More recently, in *Delmarva Drill Co. v. Tuckahoe,* 268 Md. 417, 302 A.2d 37 (1973), Delmarva was hired to drill a well under a contract which disclaimed all warranties as to the quality of water which would be produced. An employee of Delmarva, however, allegedly represented that he "knew the right strata that he needed in order to get 50 gallons a minute of good usable water." The well produced unusable water, however, and a suit resulted. In denying relief, Judge Levine wrote for the Court (*id.* at 426):

> "Here, the contract was clear and unambiguous on its face and hence, as a matter of substantive law,

> parol evidence of a prior or contemporaneous prom-
> ise to supply 'usable water' could not be admitted
> to contradict a written contract providing that '[n]o
> specific guarantee is given concerning quality of
> water.' "

The parol evidence rule precludes the granting of relief for unintentional representations preceding the contract which conflict with the terms of the contract. *See also, e.g., Foreman v. Melrod,* 257 Md. 435, 263 A.2d 559 (1970) (unequivocal promissory note may not be varied by parol terms).[12]

Entirely consistent with those cases which have not granted relief on the basis of a prior parol promise, warranty or representation when it conflicted with express terms of the agreement, are those cases in which relief has been granted where the parol statement did not conflict with contract terms. In *Shulton, Inc. v. Rubin, supra,* 239 Md. 669, Rubin contracted that " '[a]ll statements contained in any certificate ... delivered ... shall be deemed rep-resentations and warranties by Rubin hereunder.' " Rubin had delivered certificates which included false rep-resentations, and Shulton sought rescission of the contract. The trial court found that Rubin's misrepresentations were unintentional. Also, Rubin testified that the contract term which mandated that all statements, such as those upon which suit had been brought, were warranties, was not the real agreement between the parties. After pointing out that Rubin's testimony was inconsistent with the integrated contract, and that he must be bound by the contract terms, *id.* at 683-684, this Court held that Shulton was entitled to

---

12. We note that the legislature may create exceptions to the parol evi-dence rule. For example, there is a view that such an exception has been created by Article 2 of the Uniform Commercial Code, Maryland Code (1975), §§ 2-202, 2-314, 2-315, 2-316 of the Commercial Law Article. Specifically it is argued that in a sale of goods transaction, an extracontractual promise or representation may be enforceable even if it conflicts with a disclaimer, merger or integration clause of a written contract. *See* Hill, *Damages for Innocent Misrepresentation,* 73 Colum. L. Rev. 679, 740 (1973). Because this case is not governed by Article 2, however, we express no view on this issue.

rescission of the contract because of the extra-contractual misrepresentations Rubin had made. Since, in the contract, Rubin had agreed to warrant the truth of certain extra-contractual statements, a showing by Shulton of their falsity, far from conflicting with the contract terms, was completely in accord with them. *Id.* at 686.

In *Chesapeake Homes v. McGrath,* 249 Md. 480, 240 A.2d 245 (1968), the Court affirmed a decree rescinding a contract of sale and a deed on the ground of an "innocent" misrepresentation by the seller's agent to the buyer concerning the size of the lot to be sold. Because, as the Court specifically indicated (249 Md. at 482), neither the contract of sale nor the deed contained any metes and bounds description of the property, the seller's representations did not conflict with any written terms of the instruments. The parol evidence rule, therefore, posed no bar to the granting of relief in that case. *See also, e.g., Brooks v. Towson Realty, Inc.,* 223 Md. 61, 162 A.2d 431 (1960) (relief granted on showing of parol misrepresentation not contradicting express terms); *The Glendale Corp. v. Crawford,* 207 Md. 148, 114 A.2d 33 (1955) (specific performance of contract for sale of land refused on ground of a misrepresentation of fact not covered by the contract terms); *Ginter v. Townsend,* 114 Md. 122, 78 A. 908 (1910) (specific performance of a contract for sale of land refused, *inter alia,* on ground of misrepresentation which did not conflict with any express contract term.)[13]

Thus, in cases involving unintentional or innocent pre-contractual representations, this Court has regularly adhered to the parol evidence rule, and we see no reason to depart from it here.

In the present case, the trial court found that Weinberg & Green had made an oral representation, prior to signing the

---

13. In our recent decision in Martens Chevrolet v. Seney, 292 Md. 328, 439 A.2d 534 (1982), we held that negligent misrepresentations are actionable in tort. It is noteworthy, however, that the particular misrepresentation upon which suit had been brought in *Martens Chevrolet* did not contradict any term of the contract which was involved in that case. Because the issue is not before us here, we express no opinion as to whether the parol evidence rule will preclude a tort action based upon

settlement agreement, that it would offer between $275,000 and $550,000 during settlement negotiations. The trial court also found that this representation had induced the limited partners to execute the written settlement contract. If the court had further found that the law firm had acted fraudulently, a basis for rescission of the written contract would have existed, regardless of the terms of that contract. However, the trial court found that the law firm's representation was honest and unintentional. Consequently, the oral pre-contractual representation can furnish a basis for relief to the limited partners only if the representation did not vary or contradict a term of the written contract.

No one has claimed in this case that the alleged parol promise to settle the underlying lawsuit for a specific range of dollars is consistent with the language of the original contract. Moreover, in our view, no such claim could validly be made. Assuming arguendo that there is some ambiguity in the written contractual promise to undertake "good faith settlement negotiations," [14] no reasonable interpretation of that phrase is consistent with the claimed parol promise by the law firm to settle for a specific range of dollars. The limited partners' own evidence concerning the negotiations leading to the written settlement agreement showed that all persons involved recognized the inconsistency between a settlement for a dollar figure in the range claimed by the limited partners and the wording of the written contract. Furthermore, the remedy of rescission, upheld by both courts below, reflects the understanding that the alleged oral representation to settle for a specific dollar range contradicted the written settlement agreement; otherwise, there would have been no purpose in rescinding the written contract. Finally, the written settlement agreement contained the following provision:

---

a negligent misrepresentation which does contradict a term of a contract between the parties. In this connection, compare Hill, Damages for Innocent Misrepresentation, supra, with Restatement (Second) of Torts, § 552C and W. Prosser, Torts 620 (4th ed. 1971).

14. But see, e.g., Mont. Co. Council v. Bd. of Education, 277 Md. 343, 349-355, 354 A.2d 781 (1976).

> "This agreement . . . constitute[s] the entire agreement of the parties. There are no additional promises made by the parties except those expressly set forth in this agreement."

The above quoted clause expressly excludes all collateral promises.

It is clear, therefore, that the alleged oral promise or representation by the law firm to settle for a specific monetary range contradicted the terms of the written settlement contract. Consequently, the oral representation furnishes no basis for relief from the written contract.

## III.

As previously discussed, the alternate ground upon which the trial court held that the settlement agreement should be rescinded was that of unilateral mistake, under the principles of *Baltimore v. DeLuca-Davis Co.,* 210 Md. 518, 124 A.2d 557 (1956). This was the ground upon which the Court of Special Appeals upheld the trial judge. In light of the findings of the trial judge, however, unilateral mistake furnishes no basis for not giving effect to the written settlement agreement.

## A.

The Court of Special Appeals stated in this case (47 Md.App. at 266): "That rescission may be granted upon proof of a unilateral mistake is no longer open to any doubt, if it ever was." If intended to be a statement of the general rule in this State, the position of the Court of Special Appeals is actually contrary to that rule. The law in this State is clear that, absent intentional, culpable conduct, such as fraud, duress or undue influence, a unilateral mistake is ordinarily not a ground for relief from a contract. This general rule has been consistently adhered to in a variety of situations.

Very early, in *Wood v. Patterson,* 4 Md. Ch. 335 (1850), the

general rule was applied with respect to a settlement agreement. There Patterson offered $2,000 to settle various claims including an account which was stated at $2,219.45. After Wood had accepted the offer, and the settlement had been executed, Wood discovered that the balance of Patterson's account really had been $3,219.45 and that a clerical error had caused the amount to have been understated by $1,000. He sought relief, *inter alia,* on the ground that he had accepted the settlement as the result of his mistake concerning the true balance. While indicating that equity will relieve a party whose mistake resulted from conduct "which would amount to fraud," *id.* at 339, the Chancellor declined to grant Wood relief because Patterson's settlement offer had not been made with intent to defraud; Patterson had not knowingly tried to take advantage of Wood's clerical error.

In *Boyle v. Md. State Fair,* 150 Md. 333, 134 A. 124 (1926), Boyle claimed that in signing a deed she had thought that she was merely clearing title for the grantee, and did not know that she was relinquishing her own future interest in the land. Judge Walsh, writing for the Court, declined relief stating (150 Md. at 340, emphasis supplied):

> "There can be no doubt of the power of equity to give relief where there is a mistake by one party, *accompanied by fraud or other inequitable conduct on the part of the other party."*

Adding that "the facts constituting the fraud charged must be set forth with certainty and particularity," *id.* at 341, the Court denied Boyle relief because "there was no duty resting on the purchaser to advise [Boyle] of the legal effect which would flow from her execution of the deed of 1911, and no intentional misrepresentation is charged. . . ." [15] *Id.* at 342. *See also, e.g., Gross v. Stone,* 173 Md. 653, 197 A. 137 (1938);

---

**15.** The Court stated that Boyle would have been entitled to recover on the ground of innocent misrepresentation but for laches which had attached to her claim. The misrepresentation involved did not conflict with an express term of the contract, so the parol evidence rule would not have precluded relief on this ground. *See* part II of this opinion, *supra.*

*Hesson v. Hesson,* 121 Md. 626, 89 A. 107 (1913); *Cohen v. Numsen,* 104 Md. 676, 679, 65 A. 432 (1906); *Kearney v. Sascer,* 37 Md. 264 (1873); *Groff v. Rohrer,* 35 Md. 327 (1872); I J. Story, *Equity Jurisprudence* § 155 (5th ed. 1849).

The rule precluding relief based upon unilateral mistake, absent intentional, culpable conduct by the nonmistaken party, has often been applied in situations such as the instant case, where the alleged mistake relates to the meaning of a term of the contract.

*Ray v. Eurice,* 201 Md. 115, 93 A.2d 272 (1952), is very much in point. In that case, William G. Eurice & Bros., Inc. sought to obtain relief from a contract under which it had promised to build a house for Mr. & Mrs. Ray according to certain specifications. Eurice claimed that it had been under the mistaken belief that the contract was to be performed according to a set of specifications different from those set forth in the written contract. The trial court had granted relief, and this Court reversed. Judge Hammond, writing for the Court, first noted that the mistake, if any had been made at all, was unilateral (201 Md. at 125):

> "If we assume the view as to mistake held by Judge Gontrum, in effect the mistake . . . was an unilateral one. It consisted, in the opinion of the Court, in the Eurice Corporation thinking it was assenting to its own specifications, while in form it was assenting to the Ray specifications. If there was such a mistake, the legal result the Court found to follow, we think does not follow."

The Court then stated the general rule (*ibid.*):

> "The law is clear, absent fraud, duress or mutual mistake, that one having the capacity to understand a written document who reads and signs it, or, without reading it or having it read to him, signs it, is bound by his signature in law, at least. An integrated agreement may not be varied by parol where there is no mutual mistake, nor may

the parties place their own interpretation on its meaning or intended meaning."

Because "[n]either fraud nor duress are in the case" (*ibid.*), the Court held that the unilateral mistake as to the contract terms furnished no ground for rescission.

Similarly, in *Rossi v. Douglas,* 203 Md. 190, 100 A.2d 3 (1953), a party to a lease claimed that, when he executed it, he was mistaken concerning the meaning of a particular term. In declining relief, Chief Judge Sobeloff for the Court restated the general rule (203 Md. at 199):

> "There is no claim here of fraud or duress or mutual mistake, and it is well established that in the absence of these features one having the capacity to understand a written document who reads it, or, without reading it or having it read to him, signs it, is bound by his signature. . . . Williston says that even if an illiterate executes a deed under a mistake as to its contents, he is bound both at law and in equity if he did not require it to be read to him or its object explained. This is everywhere the rule."

And in *Glass v. Doctors Hospital,* 213 Md. 44, 131 A.2d 254 (1957), Dr. Glass signed an agreement releasing the Doctors Hospital from " 'all * * * actions, * * * accounts, contracts, promises, * * * claims and demands whatsoever, in law or in equity * * *.' " 213 Md. at 57. By its plain meaning, this language excluded the particular claim Dr. Glass had sought to interpose at trial. Nonetheless, he had tried to show through parol evidence that he had not intended the release to exclude that claim. Judge Hammond wrote again for the Court, stating (*ibid*):

> "We think the Chancellor was clearly justified in refusing to hear extrinsic evidence as to what the appellant intended the release to mean or what he thought it was intended to cover. Stated broadly, the rule is that as a matter of substantive law, parol evidence is inadmissible to vary, alter or contradict

a writing which is complete, unambiguous and valid, where no fraud, accident or mistake is claimed."

In *McLain v. Pernell,* 255 Md. 569, 258 A.2d 416 (1969), McLain swore that he and his lawyer had mistakenly thought that a release he had signed pertained only to property damage and not to personal injury. The Court held that there could be no relief since there had been no showing of fraud, accident [16] or mutual mistake. And in *Chertkof v. Harry C. Weiskittel Co.,* 251 Md. 544, 248 A.2d 373 (1968), *cert. denied* 394 U.S. 974, 89 S.Ct. 1467, 22 L.Ed.2d 754 (1969), Chertkof refused to perform in accordance with an oral settlement agreement on the ground that he thought that the word "exoneration" in the agreement meant "apology," even though the record indicated that the parties had agreed in open court that the exoneration "would be in the form of a release and a judgment . . . ." *Id.* at 552. The Court held that Chertkof's reliance on unilateral mistake was misplaced, and refused to relieve him from the settlement agreement.

As the foregoing cases demonstrate, in the absence of intentional, culpable conduct such as fraud or duress, this Court has consistently refused to relieve a party of his contractual obligations based upon that party's unilateral mistake *concerning the meaning of a term or requirement of the contract.* Moreover, as the cases point out, to do otherwise would represent a major departure from the objective theory of contracts.

Thus, in *Ray v. Eurice, supra,* 201 Md. at 127, involving a unilateral mistake concerning the terms of a construction contract, the Court quoted Judge Learned Hand in

---

16. The term "accident," according to Story, includes "not merely inevitable casualty, or the act of Providence, or what is technically called *vis major,* or irresistible force; but such unforeseen events, misfortunes, losses, acts or omissions, as are not the result of any negligence or misconduct in the party." I J. Story, Equity Jurisprudence § 78 (5th ed. 1849). Thus equity will grant relief to one who has lost a bond or other sealed instrument, or lost a title or deed to land, or to a legatee who has inadvertently not been paid. *See* Story, *supra,* § 78 — § 109.

*Hotchkiss v. National City Bank of New York,* 200 F. 287, 293 (S.D.N.Y. 1911), *aff'd,* 201 F. 664 (2d Cir. 1912), *aff'd,* 231 U.S. 50, 34 S.Ct. 20, 58 L.Ed. 115 (1913), as follows:

> "A contract has, strictly speaking, nothing to do with the personal, or individual, intent of the parties. A contract is an obligation attached by the mere force of law to certain acts of the parties, usually words, which ordinarily accompany and represent a known intent. If, however, it were proved by twenty bishops that either party, when he used the words, intended something else than the usual meaning which the law imposes upon them, he would still be held, unless there were some mutual mistake, or something else of the sort."

The Court in *Eurice* continued (201 Md. at 127):

> "[I]f a contract has been integrated, it may not be varied by parol in the absence of mutual mistake, nor will it be rescinded or redrafted by the Court if one of the parties finds that he has made a bad deal or has become dissatisfied with its provisions. . . .
>
> Finally, where there has been an integration of an agreement, those who executed it will not be allowed to place their own interpretation on what it means or was intended to mean. The test in such case is objective and not subjective."

*See also Chertkof v. Harry C. Weiskittel Co., supra,* 251 Md. at 552; 1 S. Williston, *Contracts* §§ 21, 94 (Rev. Ed. S. Williston & G. Thompson 1936); *Restatement of Contracts,* §§ 19, 20, 71, 501 and comments thereto. Applying this approach to Eurice's claim that it should not be bound by the objective meaning of the contract it had signed, Judge Hammond wrote for the Court (201 Md. at 126):

> "It does not lie in the mouth of [Eurice], then, to say that it intended to be bound to build only according to its specifications. First, its claimed intent is immaterial, where it has agreed in writing

to a clearly expressed and unambiguous intent to the contrary. Next, it may not vary that clearly expressed written intent by parol. And, finally, it may not put its own interpretation on the meaning of the written agreement it has executed."

We have consistently adhered to the view that parties should be bound by the objective meaning of the language in their contracts. Just last year, in *Bernstein v. Kapneck,* 290 Md. 452, 430 A.2d 602 (1981), a party to a release sought to avoid the consequences of the written contractual terms which expressly covered unknown bodily injuries which had developed or might in the future develop. The party argued that the doctrine of mutual mistake should be extended to cover the situation where both sides did not know of the extent of the injuries suffered. In refusing to extend the doctrine of mutual mistake to cover this situation, the Court stated in an opinion by Judge Digges (290 Md. at 460):

"[A]s a matter of substantive law, parol evidence ordinarily is inadmissible to vary, alter or contradict a contract, including a release, that is complete and unambiguous, in the absence of 'fraud, accident or *mutual* mistake.' *McLain v. Pernell,* 255 Md. 569, 572, 258 A.2d 416, 418 (1969) (emphasis in original)."

And later (*id.* at 462):

"[T]he inquiry focuses on the intention of the parties to the contract and not on knowledge gained subsequent to its execution. Long ago, it was resolved that this intention is to be derived in the usual case from the meaning that an individual would normally ascribe to the words chosen by the parties to memorialize their agreement, and not from other evidence indicating 'what the parties thought the agreement meant or intended it to mean.' *Board of Trustees v. Sherman,* 280 Md. 373, 380, 373 A.2d 626, 629 (1977). In any event, this intent is *certainly* not to be garnered from evidence

> indicating that one party to an unambiguous contract alone had a disparate intent. *McLain v. Pernell, supra, Peters v. Butler,* 253 Md. 7, 12, 251 A.2d 600, 602-03 (1969)."

In the case at bar, acceptance of the limited partners' argument would similarly represent an extension of the unilateral mistake doctrine which would be inconsistent with our prior cases and with the objective theory of contracts. The cases in this Court are clear that, absent fraud, duress or undue influence, a party's unilateral mistake concerning the meaning or requirements of the terms of a contract, will not furnish a basis for relief, and the party will be held to the objective meaning of the contract terms.

## B.

Notwithstanding the above-discussed cases refusing to grant relief because of unilateral mistakes over the meaning of contract terms, the limited partners argue that under this Court's decision in *Baltimore v. DeLuca-Davis Co.,* 210 Md. 518, 124 A.2d 557 (1956), they are entitled to rescission of the settlement contract. Both the trial court and the Court of Special Appeals also relied on this case. However, the principles set forth in *DeLuca-Davis* have no application to an alleged unilateral mistake concerning the meaning of the language in a contract.

In *DeLuca-Davis,* a construction bid on a municipal project was extremely low as the result of a clerical error by the bidder. The bidder became aware of this error after all bids had been opened, but a Baltimore City Charter provision prohibited the company from withdrawing its bid. However, the company promptly notified the City, requesting it either to correct the bid or to return it and the accompanying bond. The City responded that it intended to accept the original bid. The bidder then filed a bill in equity seeking reformation or rescission, and the trial court granted the former. On appeal this Court, in an opinion by Judge

Hammond, held that reformation was not the proper remedy under the circumstances,[17] but that rescission might be had. Judge Hammond commented that Williston,

> "leader of the objective theory of contracts, is critical of the rule that rescission may be had for a unilateral mistake. . . . Nevertheless, Williston recognizes that . . . '* * * some cases afford countenance for the doctrine that unilateral mistake, while the contract is still executory and the parties can be put *in statu quo,* may afford ground for rescission * * *. Recission has been most frequently sought where a price was bid which because of erroneous arithmetical processes or by the omission of items was based on a mistake. Relief has been allowed in several cases of this and other kinds, though denied in others. In some of them, at least, it would seem that the party not in error should have suspected the existence of a mistake, in which case clearly rescission and restitution should be allowed.'" *Baltimore v. DeLuca-Davis Co., supra,* 210 Md. at 526, quoting 5 S. Williston, *Contracts,* § 1578 (Rev. Ed. S. Williston & G. Thompson 1937).

The Court next summarized a general rule, consisting of four conditions, for granting rescission in these circumstances (*id.* at 527):

> "1, the mistake must be of such grave consequences that to enforce the contract as made or offered would be unconscionable; 2, the mistake must relate to a material feature of the contract; 3, the mistake must not have come about because of the violation of a positive legal duty or from culpable

---

17. The Court held that reformation was improper because the error in the bid was the result of a unilateral rather than a mutual mistake, and, more importantly, because "a court will never in the name of reformation rewrite a contract or make a contract for the parties or act unless there is clear, convincing and satisfying proof of a mutual understanding and bargain that has not been accurately expressed." Baltimore v. DeLuca-Davis Co., 210 Md. 518, 524, 124 A.2d 557 (1956).

negligence; 4, the other party must be put *in statu quo* to the extent that he suffers no serious prejudice except the loss of his bargain."

In the present case, the limited partners argue that the settlement agreement should be rescinded under this four-prong test. Weinberg & Green, on the other hand, argues that the four-prong test was not satisfied. In our view, however, it is immaterial whether the four-prong test was satisfied. *DeLuca-Davis* did not set forth an entirely new general rule that rescission of a contract may always be obtained for unilateral mistakes whenever the four enunciated conditions are met.

In *DeLuca-Davis,* the Court repeatedly emphasized that the nature of the error involved was purely arithmetic, mechanical and clerical. *See* 210 Md. at 520, 523. Moreover, the Court quoted Williston, *supra* at § 1579, that, while " 'this recognition of a unilateral mistake as a defense is inconsistent with the objective theory of contracts,' " nevertheless "[t]here are numerous cases in many states that have granted contractors cancellation of bids based on *clerical,* material, palpable, bona fide mistakes." 210 Md. at 528, emphasis supplied.

At another point, the Court in *DeLuca-Davis* explained when it is legally justifiable to relieve a bidder of his obligation (*id.* at 535, emphasis supplied):

"[I]t is legally justifiable when a court of equity is satisfied by clear, cogent and convincing proof that *an honest, clerical or mechanical error,* not the result of gross or culpable negligence, made the bid that of the bidder in form only but not in actual intent or substance, and the gain of the other party would be unconscionable if advantage were taken of the mistake and the loss would only be that of the bargain if the mistake were nullified. In such circumstances, the blundering bidder may be relieved in equity of his obligation created at law by his bid and deposit . . . ."

*See also, Baltimore County v. John K. Ruff, Inc.,* 281 Md. 62, 67, 375 A.2d 237 (1977).

Finally, in *Hill Co. v. Pallottine Fathers,* 220 Md. 526, 154 A.2d 821 (1959), a party to a contract for the sale of land containing gravel deposits sought relief from the contract on the ground of unilateral mistake induced by alleged statements concerning the gravel content, which statements proved to be untrue (220 Md. at 531-533). In denying relief, this Court rejected the appellant's reliance on *Baltimore v. DeLuca-Davis Co.,* pointing out that *DeLuca-Davis* was distinguishable because it involved, *inter alia,* a "palpable mistake, of a *clerical* nature, in the computation of . . . the bid submitted," *id.* at 534, emphasis supplied. The Court went on to hold that rescission would not lie for the type of unilateral mistake made by the appellant, saying (*ibid.*):

> "In any event, we think the mistake in the instant case only went to the commercial possibilities of exploiting the tract in question, a risk which was fairly within the contemplation of the parties and within the realm of bargain." [18]

It is clear that the principles of *DeLuca-Davis* apply only in situations where the mistake is an honest one of a clerical, mechanical or technical nature. To give *DeLuca-Davis* a broader application would represent a substantial departure from the general rule in Maryland, that absent intentional, culpable conduct such as fraud, duress or undue influence, a contract ordinarily will not be rescinded for unilateral mistake. The type of mistake made by the limited partners in

---

18. In the instant case, the risk was also "within the contemplation of the parties and within the realm of bargain." In addition to the matter being expressly covered by the terms of the contract, the uncontradicted evidence shows that during the negotiations leading to the execution of the settlement agreement, the limited partners wanted to include a term specifying that a settlement would be offered in the $275,000 to $550,000 range, but the law firm consistently refused, instead agreeing only to negotiate in good faith. Counsel for the limited partners repeatedly expressed his fear to his clients that if no settlement range were expressed in the agreement, the amount offered might well be substantially less than $275,000. The limited partners thus contemplated the risk that the settlement might be less than $275,000.

the case at bar was not mechanical or clerical. Therefore relief under the principles set forth in *DeLuca-Davis* is unavailable to the limited partners.[19]

## C.

Under the contract terms relevant to the instant controversy, the limited partners were entitled to no more from Weinberg & Green than "good faith settlement negotiations." Whether or not there was a breach of this promise by Weinberg & Green was not decided by the trial court and is not before us on appeal. In light of the evidence and the trial court's finding that there was no intentional, culpable conduct on the part of Weinberg & Green, the limited partners are not entitled to have the contract rescinded on the ground that they mistakenly believed that Weinberg & Green had promised something other than to engage in "good faith settlement negotiations."

## IV.

Although the evidence and trial judge's findings furnish no basis for according the limited partners relief from the settlement agreement, upon remand the limited partners should, if they desire, be allowed to invoke Rule 342 d. 1. and present additional evidence in light of the standards set forth in this opinion. *See* Rule 871 a. In that event, of course, the law firm will also be entitled to present additional evidence. Furthermore, issues in addition to misrepresentation and unilateral mistake may be raised, such as the meaning of the term "good faith settlement negotiations," and whether the law firm breached this contractual promise,

---

**19.** Whether *DeLuca-Davis* is further limited to bidding situations, such as involved in that case, is a matter which we need not, and do not, reach in this case.

thereby relieving the limited partners from their obligations under the settlement agreement.

> *Judgment of the Court of Special Appeals vacated, and case remanded to that Court with instructions to vacate the judgment of the Superior Court of Baltimore City and remand the case to the Superior Court of Baltimore City for proceedings not inconsistent with this opinion.*
>
> *Respondents to pay costs.*

*Murphy, C.J., concurring:*

I agree with the Court that the judgment below must be vacated. The trial judge, sitting in the Superior Court of Baltimore City in an action at law, possessed no equity powers and was therefore without jurisdiction to rescind the contract. I would go no further in disposing of the appeal, preferring on remand not to shackle the future course of this litigation with the trial judge's characterization of the misrepresentation as being an unintentional and honest one. Whether the trial judge's conclusion in this regard — which he erroneously found to supply a sufficient predicate for rescinding the contract — was influenced by a desire to facilitate future settlement negotiations is, of course, problematical at best. I simply see no need to do more here than vacate the judgment and return the parties to the *status quo* occupied prior to the aborted contractual agreement.